**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KATHERINE ALBRECHT,       )
                                    )
       Plaintiff,               )
                                      )
       v.                     )
                                      )
METROPOLITAN PIER AND      )
EXPOSITION AUTHORITY, and LETICIA )
PERALTA DAVIS, in her official capacity )
as Chief Executive Officer of the      )
Metropolitan Pier and Exposition Authority, )
                                      )
       Defendants.            )

Case ....

Judge ....

## COMPLAINT

     Plaintiff Katherine Albrecht, by and through her attorneys, makes her Complaint as follows against defendants the Metropolitan Pier and Exposition Authority ("MPEA") and Leticia Peralta Davis, in her official capacity as Chief Executive Officer of the MPEA (collectively, "the defendants"):

### I. INTRODUCTION

     1.     This is a civil rights lawsuit. Plaintiff alleges violations of the First Amendment to the United States Constitution, and brings her action pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 2201 et seq. Plaintiff seeks declaratory and injunctive relief.

     2.     Plaintiff alleges that the MPEA and Ms. Davis have violated the First Amendment to the United States Constitution by adopting and enforcing a policy of banning all expressive activity (other than that controlled by the sponsors of private trade shows, expositions, and other similar events):

      (a)      anywhere inside the McCormick Place buildings; and

      (b)      anywhere in the outdoor areas adjacent to the McCormick Place

buildings, with the narrow exception of "designated areas" hundreds of feet away from

the facility and far from plaintiff's intended audience.

      3.      Plaintiff challenges this policy both on its face and as applied to her

proposed expressive activity.

## II. JURISDICTION AND VENUE

      4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331

and 1343(3).

      5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e).

## III. THE PARTIES

      6.      Plaintiff Ms. Albrecht is the founder and director of Consumers Against

Supermarket Privacy Invasion and Numbering ("CASPIAN").

      7.      Defendant MPEA is a unit of the government of the State of Illinois. The

MPEA owns, operates, and controls McCormick Place.

      8.      Defendant Ms. Davis is the Chief Executive Officer of the MPEA. Ms.

Davis is sued in her official capacity.

## IV. FACTS

**A.**      **McCormick Place**

      9.      McCormick Place is a convention center located near downtown Chicago.

McCormick Place has the following attributes:

      (a)      It is the nation's premier convention facility, and is visited by more

than 4,000,000 people every year.

(b)     It contains 2.2 million square feet of meeting space, 112 meeting rooms, three theaters, and seating for 10,000 people.

(c)     It is a forum where many business, professional, governmental, and religious organizations gather to communicate with each other regarding important economic and political issues.

(d)     It is an integral part of the economic and political life of the City of Chicago, the State of Illinois, and the entire nation.

(e)     Elected officials and political party leaders frequently participate in functions at McCormick Place.

(f)     Sponsors of events at McCormick Place and the MPEA itself frequently summon the media to McCormick Place in order to disseminate their economic and political views to a larger audience.

(g)     Prior to the existence of McCormick Place, events that now take place at McCormick Place took place at hotels in the center of downtown Chicago immediately adjacent to streets, sidewalks, and parks that are traditional public forums.

(h)     Today, but for the existence of McCormick Place, events that now take place at McCormick Place would take place at the hotels in the center of downtown Chicago immediately adjacent to streets, sidewalks, and parks that are traditional public forums.

10.     McCormick Place contains a Grand Concourse that serves as a thoroughfare, mall and gathering place for members of the public.  It is a traditional public forum.  The Grand Concourse has the following attributes:

(a)     It is open to the public – including to persons with no connection whatsoever to any of the trade shows, expositions, or other events occurring within McCormick Place – to freely enter, move about from place to place, and gather and communicate with other people.

(b)     It is at least 50 feet wide in many locations.

(c)     It allows a high volume of pedestrian flow.

(d)     It provides direct access to the City's transportation grid, including streets, sidewalks, and the Metra train.

(e)     It contains many restaurants and stores, most or all of which display commercial advertisements.

(f)     It contains beautiful fountains and adjacent areas used and plainly designed as places for the public to stop and relax.

(g)     People within the Grand Concourse commonly wear clothes that bear a wide variety of written and other messages.

(h)     Upon information and belief, during election seasons, people within the Grand Concourse commonly wear clothes and buttons that bear explicit political messages.

(i)     It contains a collection of more than 70 contemporary works of art exhibited throughout the center

11.     There are many locations within the Grand Concourse and adjacent to pedestrian flow that are compatible with a wide scope of expressive activity without infringing upon any security, safety, traffic flow, or other legitimate governmental interests.

4

12.     Immediately to the west of the Grand Concourse are a grassy park and adjacent sidewalks bounded on the west by Martin Luther King Drive, and on the north, east and south by a U-shaped driveway fashioned McCormick Square.  This park and sidewalks collectively comprise a traditional public forum.  This area has the following attributes:

(a)     It is open to the public – including to persons with no connection whatsoever to any of the trade shows, expositions, or other events occurring within McCormick Place – to freely enter and move about from place to place.

(b)     It is an outdoor, non-enclosed area.

(c)     It contains sculptures and foliage areas.

(d)     Hundreds of people can stand in and walk through this area at the same time.

(e)     The sidewalks and adjacent streets are part of the transportation grid of the City of Chicago.

13.     There are many locations within the this park and adjacent sidewalks that are compatible with a wide scope of expressive activity without infringing upon any security, safety, traffic flow, or other legitimate governmental interests.

14.     There are five large pylons located at the western edge of this traditional public forum, immediately adjacent to the east side of Martin Luther King Drive.  The function of these pylons is aesthetic.  The area immediately adjacent to these pylons has the following attributes:

(a)     The pylons are at the farthest possible point within this traditional public forum away from the main west-facing entrance of the Grand Concourse (*i.e.*, Gate 4).

(b)     The pylons are at least 200 feet away from Gate 4.

(c)     The pylons are far from any significant pedestrian flow, both in absolute terms and as a portion of the overall pedestrian flow passing through the Grand Concourse.

(d)     The overwhelming majority of the people who enter McCormick Place for the purposes of a convention or other gathering will never come anywhere near the pylons:

(i)     People who arrive by Metra train will enter the facility from the inside.

(ii)     People who spent the prior night at the adjacent Hyatt Hotel will enter the facility from the inside.

(iii)     People who park their cars in Underground Parking Garage C will enter the facility from the inside.

(iv)     People who park their cars in Parking Garage A may enter the facility from the inside by way of a pedestrian walkway.

(v)     People who park their cars in the Soldier Field Lot will enter the facility at points very far from the pylons.

(vi)     People who are dropped off by bus, taxi, or other car at Gate 1, Gate 2, Gate 3, the North Building Taxi Drop Off, or either of the Lakeside Taxi Drop Offs will enter the facility at points very far from the pylons.

(vii)    People who are dropped off by bus, taxi, or other car at Gate 4 will enter the facility at a point at least 200 feet away from the pylons.

**B.    Ms. Albrecht's planned expressive activity**

15.    Ms. Albrecht and other members of CASPIAN oppose business practices that invade consumer privacy.  CASPIAN opposes the use of Radio Frequency Identification ("RFID") to tag and track individual consumer products.  It also opposes the development of the Electronic Product Code ("EPC") network that is designed to uniquely number all RFID tagged items and connect them to computer databases via the Internet.  Ms. Albrecht and other members of CASPIAN associate to advance their shared beliefs.  In doing so, they engage in public advocacy regarding their objections to RFID, including by means of public education.

16.    On September 15 through 17, 2003, the Electronic Product Code ("EPC") Symposium will take place at McCormick Place, at Hall B-1 of Level 3 of the North Building.  The subject of this conference is the development of RFID.  The EPC Symposium is sponsored by the Auto-ID Center, which is developing RFID with the support of over 100 businesses and government bodies from around the world.  At least 24 businesses will exhibit their products at the EPC Symposium, including major companies like IBM.  Thousands of key decision makers in leading organizations have been invited to the EPC Symposium.

17.    On September 16, 2003, Ms. Albrecht and other members of CASPIAN plan to engage in expressive activity at McCormick Place.  Their intended audience is the participants in the EPC Symposium.  Their intended message is opposition to RFID.

18.    Ms. Albrecht and up to 10 other members of CASPIAN would like to engage in the following expressive activities inside the Grand Concourse, in reasonable proximity to the flow of pedestrians to and from the EPC Symposium at Hall B-1:

   (a)    distributing leaflets;

   (b)    wearing clothing that states "Stop RFID" and related political messages; and

   (c)    speaking to people who wish to speak with them about this political matter of significant public importance.

19.    Also, Ms. Albrecht and up to 5 other members of CASPIAN plan to purchase a $75.00 day pass to view the merchandize on display in Hall B-1. While viewing the merchandize, they would like to engage in the following expressive activity: wearing clothing that states "Stop RFID" and related political messages.

20.    Also, Ms. Albrecht and up to 10 other members of CASPIAN would like to engage in the following expressive activities in the outdoors area immediately to the west of the Grand Concourse, within 25 feet from Gate 4:

   (a)    distributing leaflets;

   (b)    wearing clothing that states "Stop RFID" and related political messages;

   (c)    speaking to people who wish to speak with them about this political matter of significant public importance; and

   (d)    carrying signs that state "Stop RFID" and related political messages.

21.     Leafleting is one of the most effective instruments in the dissemination of information and opinion. There are no problems intrinsic to the act of leafleting that would make it naturally incompatible with a large, multipurpose forum. For example, leafleting will rarely (if ever) contribute to congestion of foot traffic.

22.     The wearing of clothing is an effective instrument in the dissemination of information and opinion. People commonly wear clothes that bear a wide variety of written and other messages. There are no problems intrinsic to the act of wearing clothing with political messages that would make it naturally incompatible with a large, multipurpose forum. For example, it will rarely (if ever) contribute to congestion of foot traffic.

**C.     The MPEA's policy regarding expressive activity**

23.     On October 1, 2001, the MPEA promulgated a written policy regarding expressive activity at McCormick Place. The expressive activities regulated by this policy include but are not limited to "literature distribution". The policy states that all expressive activities "must take place within the designated areas . . . shown on a map attached to the Permit".

24.     The written map attached to the permit states, in relevant part: "Activities related to shows in the North and South Buildings must be held on the sidewalk between the pylons on Martin Luther King Drive".

25.     On or about August 28, 2003, CASPIAN member Liz McIntyre spoke by telephone with Fred Simon, a supervisor at McCormick Place. Mr. Simon provided to CASPIAN a copy of the aforementioned policy. Mr. Simon further advised Ms.

9

McIntyre that the wearing of clothing that bears expressive messages would not be permitted within McCormick Place.

26.     Thus, as set forth in the foregoing three paragraphs, the MPEA has adopted and enforces a policy of banning all expressive activity (other than that controlled by the sponsors of private trade shows, expositions, and other similar events):

      (a)     anywhere inside the McCormick Place buildings; and

      (b)     anywhere in the outdoor areas adjacent to the McCormick Place buildings, with the narrow exception of "designated areas" hundreds of feet away from the facility and far from plaintiff's intended audience.

**D.     The MPEA's rejection of Ms. Albrecht's expressive activity**

27.     On September 9, 2003, counsel for Ms. Albrecht sent a letter to the MPEA requesting permission for Ms. Albrecht and other members of CASPIAN to engage in the following expressive activities:

      (a)     within the Grand Concourse: distributing leaflets, wearing clothing that states "Stop RFID", and engaging in public education; and

      (b)     within Hall B-1: wearing clothing that states "Stop RFID".

28.     On September 11, 2003, counsel for the MPEA sent a letter to counsel for Ms. Albrecht stating that other than private trade shows, expositions, and similar events, "the facility's interior is not otherwise open to the public for free expression". The letter further stated that the MPEA "restricts public expression on the facility's exterior to the designated areas identified in the permit application". The MPEA enclosed with this letter a copy of the written policy described above in Part IV(C).

29.     Also on September 11, 2003, counsel for Ms. Albrecht spoke by telephone with counsel for the MPEA.  Counsel for Ms. Albrecht asked whether the MPEA would allow any members of CASPIAN to engage in expressive activity in the area between Martin Luther Kind Drive and the U-shaped driveway fashioned McCormick Square, at any place closer to Gate 4 than at the pylons.  Counsel for the MPEA answered in the negative.

**E.      <u>Injury to Ms. Albrecht</u>**

30.     If the MPEA enforces its policy identified above in Part IV(C), Ms. Albrecht and the other members of CASPIAN will be unable to effectively communicate with their intended audience of participants in the EPC Symposium.

31.     The adoption and enforcement of the MPEA's policy identified above in Part IV(C) imposes an unreasonable restriction on the First Amendment rights of citizens and groups like Ms. Albrecht to express their views on political, social and cultural issues.

**F.      <u>Necessity of injunctive relief</u>**

32.     Unless enjoined by this Court, the MPEA will continue to enforce the policy described above in Part IV(C).

33.     Ms. Albrecht will suffer irreparable harm as a result of the MPEA's adoption and enforcement of the policy described above in Part IV(C).

34.     Ms. Albrecht has no adequate remedy at law.

## V. CLAIM FOR RELIEF

35.     The adoption and enforcement of the policy described above in Part IV(C) violates the First Amendment to the United States Constitution, both on its face and as applied to the plaintiff's proposed expressive activity.

## VI. PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests the following relief:

A.     Entry of a declaratory judgment that the defendants violated the First Amendment by adopting and enforcing their policy of banning all expressive activity (other than that controlled by the sponsors of private trade shows, expositions, and other similar events):

   (1)     anywhere inside the McCormick Place buildings; and

   (2)     anywhere in the outdoor areas adjacent to the McCormick Place buildings, with the narrow exception of "designated areas" hundreds of feet away from the facility and far from plaintiff's intended audience.

B.     Entry of a temporary restraining order, and then a preliminary injunction, and then a permanent injunction that enjoins the defendants:

   (1)     from enforcing their policy of banning all expressive activity (other than that controlled by the sponsors of private trade shows, expositions, and other similar events):

      (a)     anywhere inside the McCormick Place buildings; and

      (b)     anywhere in the outdoor areas adjacent to the McCormick Place buildings, with the narrow exception of "designated areas" hundreds of feet away from the facility and far from plaintiff's intended audience;

12

(2)     from preventing Ms. Albrecht and up to 10 other members of CASPIAN from engaging in the following expressive activities inside the Grand Concourse, in reasonable proximity to the flow of pedestrians to and from the EPC Symposium at Hall B-1:

(a)     distributing leaflets;

(b)     wearing clothing that states "Stop RFID" and related political messages; and

(c)     speaking to people who wish to speak with them about this political matter of significant public importance;

(3)     from preventing Ms. Albrecht and up to 5 other members of CASPIAN from engaging in the following expressive activity while viewing the merchandize on display in Hall B-1 in exchange for a $75.00 day pass: wearing clothing that states "Stop RFID" and related political messages; and

(4)     from preventing Ms. Albrecht and up to 10 other members of CASPIAN from engaging in the following expressive activities in the outdoor area immediately to the west of the Grand Concourse, within 25 feet from Gate 4:

(a)     distributing of leaflets;

(b)     wearing clothing that states "Stop RFID" and related political messages;

(c)     speaking to people who wish to speak with them about this political matter of significant public importance; and

(d)     carrying signs that state "Stop RFID" and related political messages.

C.     Award plaintiffs their reasonable attorneys' fees, costs, and expenses

pursuant to 42 U.S.C. § 1988.

D.     Award such other and further relief as this Court may deem just and

proper.

DATED:  September 12, 2003

Respectfully submitted:

One of plaintiffs' attorneys

HARVEY GROSSMAN
ADAM SCHWARTZ
CONNIE CHUNG
Roger Baldwin Foundation of ACLU, Inc.
180 North Michigan Avenue, Suite 2300
Chicago, Illinois 60601
(312) 201-9740

14

Civil Cover Sheet

#2

Page 1 of 2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

FILED-ED4

03 SEP 12 PM 2:23

CLERK
U.S. DISTRICT COURT

# **Civil Cover Sheet**

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the Northern District of Illinois.

Plaintiff(s): **Katherine Albrecht**

Defendant(s):**METROPOLITAN PIER AND EXPOSITION AUTHORITY, and LETICIA PERALTA DAVIS, in her official capacity as Chief Executive Officer of the Metropolitan Pier and Exposition Authority**

County of Residence: New Hampshire

County of Residence:

Plaintiff's Atty:  Harvey Grossman
Roger Baldwin Foundation of ACLU, Inc.
180 N. Michigan Avenue, Suite 2300, Chicago, IL 60601
(312) 201-9740

Defendant's Atty:  Renee Benjamin
Metropolitan Pier and Exposition Authority
301 E. Cermak, Chicago, IL 60616
(312) 791-7500

II. Basis of Jurisdiction:       **3. Federal Question (U.S. not a party)**

III. Citizenship of Principal Parties **(Diversity Cases Only)**

Plaintiff:- **N/A**
Defendant:- **N/A**

DOCKETED
SEP 1 5 2003

JUDGE NORDBERG

03C 6472

MAGISTRATE JUDGE DENLOW

IV. Origin :        **1. Original Proceeding**

V. Nature of Suit:        **440 Other Civil Rights**

VI. Cause of Action:        **42 U.S.C. Sections 1983 and 1988; 28 U.S.C. Section 2201 et seq.**

VII. Requested in Complaint

Class Action: **No**
Dollar Demand:
Jury Demand: **No**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature: _Adam Schwartz_        9/12/03

1-2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In the Matter of

KATHERINE ALBRECHT, Plaintiff,
v.
METROPOLITAN PIER AND EXPOSITION AUTHORITY, and LETICIA PERALTA
DAVIS, in her official capacity as Chief Executive Officer of the Metropolitan Pier and
Exposition Authority, Defendants

Case Number:

FILED-ED4
03 SEP 12 PM 2: 23
CLERK DISTRICT COURT

03C 6472

JUDGE NORDBERG
MAGISTRATE JUDGE DENLOW
SEP 1 5 2003

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Katherine Albrecht, Plaintiff

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Harvey Grossman | NAME Adam Schwartz |
| FIRM Roger Baldwin Foundation of ACLU, Inc. | FIRM Roger Baldwin Foundation of ACLU, Inc. |
| STREET ADDRESS 180 N. Michigan Avenue, Suite 2300 | STREET ADDRESS 180 N. Michigan Avenue, Suite 2300 |
| CITY/STATE/ZIP Chicago, Illinois 60601 | CITY/STATE/ZIP Chicago, Illinois 60601 |
| TELEPHONE NUMBER (312) 201-9740  FAX NUMBER (312) 288-5225 | TELEPHONE NUMBER (312) 201-9740  FAX NUMBER (312) 288-5225 |
| E-MAIL ADDRESS hgrossman@aclu-il.org | E-MAIL ADDRESS aschwartz@aclu-il.org |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 1071629 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6238050 |
| MEMBER OF TRIAL BAR? YES ☑ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☑ |
| TRIAL ATTORNEY? YES ☑ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☑ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☑ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Connie Y. Chung | NAME |
| FIRM Roger Baldwin Foundation of ACLU, Inc. | FIRM |
| STREET ADDRESS 180 N. Michigan Avenue, Suite 2300 | STREET ADDRESS |
| CITY/STATE/ZIP Chicago, IL 60601 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (312) 321-4200  FAX NUMBER (312) 288-5225 | TELEPHONE NUMBER  FAX NUMBER |
| E-MAIL ADDRESS cchung@aclu-il.org | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 90785559 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

1-3