IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KATHERINE ALBRECHT,              )
                                 )
         plaintiff,              )
                                 )        No. 03 C 6472
         v.                      )
                                 )        Hon. Judge Nordberg
METROPOLITAN PIER AND            )
EXPOSITION AUTHORITY and         )        Magistrate Judge Denlow
LETICIA PERALTA DAVIS, in her    )
official capacity as CEO of the MPEA,  )
                                 )
         defendants.             )

**ANSWER**

Defendants Metropolitan Pier and Exposition Authority ("the Authority"), and Leticia

Peralta-Davis, in her official capacity as Chief Executive Officer of the Authority (collectively,

"Defendants") answer the Complaint in this matter as set forth below.

Paragraph 1 of the Complaint states:

> 1.    This is a civil rights lawsuit. Plaintiff alleges violations of the
> First Amendment to the United States Constitution, and brings her
> action pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 2201.
> Plaintiff seeks declaratory and injunctive relief.

ANSWER: Defendants admit that this action is a civil rights action as summarized in paragraph 1,

but deny that they have violated the First Amendment, deny that plaintiff has a valid claim for relief

under 42 U.S.C. §§ 1983 and 1988, deny that plaintiff is entitled to declaratory or injunctive relief

and deny that the lawsuit has merit.

*15*

Paragraph 2 of the Complaint States:

>    2.    Plaintiff alleges that the MPEA and Ms. Davis have violated the First Amendment to the United States Constitution by adopting and enforcing a policy of banning all expressive activity (other than that controlled by the sponsors of private trade shows, expositions, and other similar events):

>    (a)    anywhere inside the McCormick Place buildings; and

>    (b)    anywhere in the outdoor areas adjacent to the McCormick Place buildings, with the narrow exception of "designated areas" hundreds of feet away from the facility and far from plaintiffs intended audience.

ANSWER: Defendants admit that plaintiff alleges the matters stated in this paragraph, but Defendants deny the substance of those allegations. In particular, Defendants deny that they have violated the First Amendment, and deny that plaintiff has accurately characterized the Authority's policy on public expression at McCormick Place.

Paragraph 3 of the Complaint States:

>    3.    Plaintiff challenges this policy both on its face and as applied to her proposed expressive activity.

ANSWER: Defendants admit that plaintiff brings both a facial and as applied challenge to the Authority's policy on public expression at McCormick Place, but Defendants deny that either of those challenges has any merit.

Paragraph 4 of the Complaint States:

>    4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3).

ANSWER: Defendants admit the allegations of paragraph 4.

Paragraph 5 of the Complaint States:

>  5.    Venue is proper in this judicial district pursuant to 28 U.S.C.
>  § 1391(e).

ANSWER:  Defendants admit the allegations of paragraph 5.

Paragraph 6 of the Complaint States:

>  6.    Plaintiff Ms. Albrecht is the founder and director of
>  Consumers Against Supermarket Privacy Invasion and Numbering
>  ("CASPIAN").

ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations of this paragraph, and on that basis deny the allegations.

Paragraph 7 of the Complaint States:

>  7.    Defendant MPEA is a unit of the government of the State of
>  Illinois.  The MPEA owns, operates, and controls McCormick Place.

ANSWER:  Defendants admit that the Authority owns, operates and controls McCormick Place.

Defendants deny the remaining allegations of paragraph 7.  Further answering, the Authority states

that it is a unit of state and local government created by statute, and that the Authority's enabling

legislation speaks for itself.

Paragraph 8 of the Complaint States:

>  8.    Defendant Ms. Davis is the Chief Executive Officer of the
>  MPEA.  Ms. Davis is sued in her official capacity.

ANSWER:  Defendants admit the allegations of paragraph 8.

Paragraph 9 of the Complaint States:

>  9.    McCormick Place is a convention center located near
>  downtown Chicago.  McCormick Place has the following attributes:

3

(a)　　It is the nation's premier convention facility, and is visited by more than 4,000,000 people every year.

(b)　　It contains 2.2 million square feet of meeting space, 112 meeting rooms, three theaters, and seating for 10,000 people.

(c)　　It is a forum where many business, professional, governmental, and religious organizations gather to communicate with each other regarding important economic and political issues.

(d)　　It is an integral part of the economic and political life of the City of Chicago, the State of Illinois, and the entire nation.

(e)　　Elected officials and political party leaders frequently participate in functions at McCormick Place.

(f)　　Sponsors of events at McCormick Place and the MPEA itself frequently summon the media to McCormick Place in order to disseminate their economic and political views to a larger audience.

(g)　　Prior to the existence of McCormick Place, events that now take place at McCormick Place took place at hotels in the center of downtown Chicago immediately adjacent to streets, sidewalks, and parks that are traditional public forums.

(h)　　Today, but for the existence of McCormick Place, events that now take place at McCormick Place would take place at the hotels in the center of downtown Chicago immediately adjacent to streets, sidewalks, and parks that are traditional public forums.

ANSWER: Defendants admit that McCormick Place is a convention center located near downtown Chicago. Defendants admit the allegations of paragraph 9(a), 9(b) and 9(d) on information and belief, but without prejudice to introducing more specific or accurate evidence on the matters alleged therein. Defendants state that paragraphs 9(c), 9(e) and 9(f) are vague and argumentative, and on that basis deny them. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph, and on that basis deny them.

Paragraph 10 of the Complaint States:

      10.    McCormick Place contains a Grand Concourse that serves as a thoroughfare, mall and gathering place for members of the public. It is a traditional public forum. The Grand Concourse has the following attributes:

      (a)    It is open to the public - including to persons with no connection whatsoever to any of the trade shows, expositions, or other events occurring within McCormick Place - to freely enter, move about from place to place, and gather and communicate with other people.

      (b)    It is at least 50 feet wide in many locations.

      (c)    It allows a high volume of pedestrian flow.

      (d)    It provides direct access to the City's transportation grid, including streets, sidewalks, and the Metra train.

      (e)    It contains many restaurants and stores, most or all of which display commercial advertisements.

      (f)    It contains beautiful fountains and adjacent areas used and plainly designed as places for the public to stop and relax.

      (g)    People within the Grand Concourse commonly wear clothes that bear a wide variety of written and other messages.

      (h)    Upon information and belief, during election seasons, people within the Grand Concourse commonly wear clothes and buttons that bear explicit political messages.

      (i)    It contains a collection of more than 70 contemporary works of art exhibited throughout the center

ANSWER: Defendants admit that the Grand Concourse functions at times as a thoroughfare and gathering place for members of the public attending events at McCormick Place. Defendants admit that at times the Grand Concourse is open to the public, including persons with no connection to events occurring at McCormick Place, and that it is over 50 feet wide in some areas and at times

experiences a high volume of pedestrian flow. Defendants state that paragraphs 10(g) and 10(h) are vague and argumentative and on that basis deny them. Defendants deny the remaining allegations of paragraph 10, and in particular deny that the Grand Concourse is a public forum. Further answering, Defendants state that the portion of the Grand Concourse that links exhibition hall A-1 in the South Building to hall B-1 in the North Building is at times closed to the public and licensed to private trade shows and exhibitions.

Paragraph 11 of the Complaint States:

> 11. There are many locations within the Grand Concourse and adjacent to pedestrian flow that are compatible with a wide scope of expressive activity without infringing upon any security, safety, traffic flow, or other legitimate governmental interests.

ANSWER: Defendants deny the allegations of paragraph 11.

Paragraph 12 of the Complaint States:

> 12. Immediately to the west of the Grand Concourse are a grassy park and adjacent sidewalks bounded on the west by Martin Luther King Drive, and on the north, east and south by a U-shaped driveway fashioned McCormick Square. This park and sidewalks collectively comprise a traditional public forum. This area has the following attributes:

> (a) It is open to the public - including to persons with no connection whatsoever to any of the trade shows, expositions, or other events occurring within McCormick Place - to freely enter and move about from place to place.

> (b) It is an outdoor, non-enclosed area.

> (c) It contains sculptures and foliage areas.

> (d) Hundreds of people can stand in and walk through this area at the same time.

(e)     The sidewalks and adjacent streets are part of the transportation grid of the City of Chicago.

ANSWER:  Defendants admit that McCormick Square is west of Gate 4, bounded on the west by Martin Luther King Drive and on the north, east and south by a U-shaped driveway.  Defendants admit that this space is open to the public, including to persons with no connection to events occurring at McCormick Place; that it is an outdoor area that contains sculpture and foliage; and that Martin Luther King Drive is part of the City's transportation grid.  Defendants deny the remaining allegations of paragraph 12, and in particular deny that McCormick Square or its abutting sidewalks, driveway or environs are a public park or a public forum.  Further answering, the Authority states that McCormick Square functions as a landscaped outdoor western entrance to McCormick Place. The Authority does not allow hundreds of people to gather in the square because, among other reasons, that would constitute a safety hazard and ruin the landscaping.  However, the Authority has designated a portion of this square, around the pylons on the western side of the square, as an area where members of the public can engage in free public expression.

Paragraph 13 of the Complaint States:

13.     There are many locations within this park and adjacent sidewalks that are compatible with a wide scope of expressive activity without infringing upon any security, safety, traffic flow, or other legitimate governmental interests.

ANSWER:  Defendants deny the allegations of paragraph 13.

Paragraph 14 of the Complaint States:

14.     There are five large pylons located at the western edge of this traditional public forum, immediately adjacent to the east side of Martin Luther King Drive. The function of these pylons is aesthetic. The area immediately adjacent to these pylons has the following attributes:

7

(a)     The pylons are at the farthest possible point within this traditional public forum away from the main west-facing entrance of the Grand Concourse (i.e., Gate 4).

(b)     The pylons are at least 200 feet away from Gate 4.

(c)     The pylons are far from any significant pedestrian flow, both in absolute terms and as a portion of the overall pedestrian flow passing through the Grand Concourse.

(d)     The overwhelming majority of the people who enter McCormick Place for the purposes of a convention or other gathering will never come anywhere near the pylons:

(i)     People who arrive by Metra train will enter the facility from the inside.

(ii)     People who spent the prior night at the adjacent Hyatt Hotel will enter the facility from the inside.

(iii)     People who park their cars in Underground Parking Garage C will enter the facility from the inside.

(iv)     People who park their cars in Parking Garage A may enter the facility from the inside by way of a pedestrian walkway.

(v)     People who park their cars in the Soldier Field Lot will enter the facility at points very far from the pylons.

(vi)     People who are dropped off by bus, taxi, or other car at Gate 1, Gate 2, Gate 3, the North Building Taxi Drop Off, or either of the Lakeside Taxi Drop Offs will enter the facility at points very far from the pylons.

(vii)     People who are dropped off by bus, taxi, or other car at Gate 4 will enter the facility at a point at least 200 feet away from the pylons.

ANSWER: Defendants admit that there are five large pylons located in the western portion of

McCormick Square, adjacent to the east side of Martin Luther King Drive, and that these pylons

serve an aesthetic function. Defendants admit the allegations of Paragraph 14(b). Defendants deny

the allegations of paragraph 14(a) and 14(c). Defendants deny the first clause of paragraph 14(d)

prior to the colon. Defendants lack knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations of paragraph 14(d)(i) through 14(d)(vii), and in the alternative deny

those allegations as vague and argumentative. Defendants deny any remaining allegations of

paragraph 14, and in particular deny that McCormick Square or its abutting sidewalks, driveway or

environs are a public forum.

Paragraph 15 of the Complaint States:

> 15. Ms. Albrecht and other members of CASPIAN oppose
> business practices that invade consumer privacy. CASPIAN opposes
> the use of Radio Frequency Identification ("RFID") to tag and track
> individual consumer products. It also opposes the development of the
> Electronic Product Code ("EPC") network that is designed to
> uniquely number all RFID tagged items and connect them to
> computer databases via the Internet. Ms. Albrecht and other members
> of CASPIAN associate to advance their shared beliefs. In doing so,
> they engage in public advocacy regarding their objections to RFID,
> including by means of public education.

ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations of this paragraph, and on that basis deny the allegations.

Paragraph 16 of the Complaint States:

> 16. On September 15 through 17, 2003, the Electronic Product
> Code ("EPC") Symposium will take place at McCormick Place, at
> Hall B-1 of Level 3 of the North Building. The subject of this
> conference is the development of RFID. The EPC Symposium is
> sponsored by the Auto-ID Center, which is developing RFID with the
> support of over 100 businesses and government bodies from around
> the world. At least 24 businesses will exhibit their products at the
> EPC Symposium, including major companies like IBM. Thousands
> of key decision makers in leading organizations have been invited to
> the EPC Symposium.

ANSWER: Defendants admit that on September 15 through 17, 2003, the Electronic Product Code ("EPC") Symposium took place at McCormick Place in Hall B-1 of Level 3 of the North Building, and that this event was sponsored in part by the Auto-ID Center. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph, and on that basis deny those allegations. In the alternative, Defendants state that no answer to this paragraph is required because these allegations have become moot in light of the Court's resolution of plaintiff's motion for a TRO.

Paragraph 17 of the Complaint States:

> 17. On September 16, 2003, Ms. Albrecht and other members of CASPIAN plan to engage in expressive activity at McCormick Place. Their intended audience is the participants in the EPC Symposium. Their intended message is opposition to RFID.

ANSWER: Defendants generally lack knowledge or information sufficient to form a belief as to the truth or falsity of any allegations regarding the "plans" of plaintiff and other members of CASPIAN, and on that basis deny the allegations of this paragraph. Further answering, Defendants state on information and belief that plaintiff and others did, in fact, engage in expressive activity at McCormick Place on September 16, 2003. In the alternative, Defendants state that no answer to this paragraph is required because these allegations have become moot in light of the Court's resolution of plaintiff's motion for a TRO.

Paragraph 18 of the Complaint States:

> 18. Ms. Albrecht and up to 10 other members of CASPIAN would like to engage in the following expressive activities inside the Grand Concourse, in reasonable proximity to the flow of pedestrians to and from the EPC Symposium at Hall B-1:
>
> (a) distributing leaflets;

10

> (b)      wearing clothing that states "Stop RFID" and related
> political messages; and

> (c)      speaking to people who wish to speak with them about
> this political matter of significant public importance.

ANSWER: Defendants generally lack knowledge or information sufficient to form a belief as to the

truth or falsity of any allegations regarding what plaintiff and other members of CASPIAN "would

like" to do, and on that basis deny the allegations of this paragraph. Further answering, Defendants

state on information and belief that plaintiff and others did, in fact, engage in expressive activity at

McCormick Place on September 16, 2003.    In the alternative, Defendants state that no answer to

this paragraph is required because these allegations have become moot in light of the Court's

resolution of plaintiff's motion for a TRO.

Paragraph 19 of the Complaint States:

> 19.      Also, Ms. Albrecht and up to 5 other members of CASPIAN
> plan to purchase a $75.00 day pass to view the merchandise on
> display in Hall B-1.  While viewing the merchandise, they would like
> to engage in the following expressive activity: wearing clothing that
> states "Stop RFID" and related political messages.

ANSWER: Defendants generally lack knowledge or information sufficient to form a belief as to the

truth or falsity of any allegations regarding the "plans" of plaintiff and other members of CASPIAN,

or what such persons "would like" to do, and on that basis Defendants deny the allegations of this

paragraph.  Further answering, Defendants state on information and belief that plaintiff and others

did, in fact, engage in expressive activity at McCormick Place on September 16, 2003.  In the

alternative, Defendants state that no answer to this paragraph is required because these allegations

have become moot in light of the Court's resolution of plaintiff's motion for a TRO.

11

Paragraph 20 of the Complaint States:

> 20.     Also, Ms. Albrecht and up to 10 other members of CASPIAN would like to engage in the following expressive activities in the outdoors area immediately to the west of the Grand Concourse, within 25 feet from Gate 4:
>
>> (a)     distributing leaflets;
>>
>> (b)     wearing clothing that states "Stop RFID" and related political messages;
>>
>> (c)     speaking to people who wish to speak with them about this political matter of significant public importance; and
>>
>> (d)     carrying signs that state "Stop RFID" and related political messages.

ANSWER: Defendants generally lack knowledge or information sufficient to form a belief as to the truth or falsity of any allegations regarding what plaintiff and other members of CASPIAN "would like" to do, and on that basis deny the allegations of this paragraph. Further answering, Defendants state on information and belief that plaintiff and others did, in fact, engage in expressive activity at McCormick Place on September 16, 2003. In the alternative, Defendants state that no answer to this paragraph is required because these allegations have become moot in light of the Court's resolution of plaintiff's motion for a TRO.

Paragraph 21 of the Complaint States:

> 21.     Leafleting is one of the most effective instruments in the dissemination of information and opinion. There are no problems intrinsic to the act of leafleting that would make it naturally incompatible with a large, multipurpose forum. For example, leafleting will rarely (if ever) contribute to congestion of foot traffic.

ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of the first sentence of this paragraph, and on that basis deny those

12

allegations. Defendants deny the remaining allegations of paragraph 21 as applied to McCormick

Place. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity

of the remaining allegations of paragraph 21 as applied to places other than McCormick Place, and

on that basis deny such allegations.

Paragraph 22 of the Complaint States:

> 22. The wearing of clothing is an effective instrument in the dissemination of information and opinion. People commonly wear clothes that bear a wide variety of written and other messages. There are no problems intrinsic to the act of wearing clothing with political messages that would make it naturally incompatible with a large, multipurpose forum. For example, it will rarely (if ever) contribute to congestion of foot traffic.

ANSWER: Defendants state that no answer to this paragraph is required because these allegations

have become moot in light of the Court's resolution of plaintiff's motion for a TRO, and in

particular, Defendants' clarification of their policy as regards message-bearing clothing made on the

record at the TRO hearing. In the alternative, Defendants state that the allegations of this paragraph

are vague and argumentative and on that basis deny them. Further answering, Defendants state that

apart from laws and local ordinances of general applicability governing matters such as public

nudity, indecency and obscenity, the Authority does not enforce restrictions on the type of clothing

worn at McCormick Place. In particular, the Authority does not prohibit members of the public from

wearing message-bearing T-shirts, caps, buttons and the like at McCormick Place. Private licensors

of space at McCormick Place, however, may set whatever dress codes they deem appropriate for

their private event, such as requiring formal attire for an event at the Arie Crown Theater or

corporate casual for a trade meeting.

Paragraph 23 of the Complaint States:

> 23.    On October 1, 2001, the MPEA promulgated a written policy
> regarding expressive activity at McCormick Place. The expressive
> activities regulated by this policy include but are not limited to
> "literature distribution". The policy states that all expressive
> activities "must take place within the designated areas . . . shown on
> a map attached to the Permit".

ANSWER: Defendant states that the allegations of this paragraph are characterizations and
incomplete quotations of the Authority's policy on public expression at McCormick Place attached
to the complaint in this matter as Ex. G, which speaks for itself, and Defendants deny any
characterizations inconsistent with the written policy.

Paragraph 24 of the Complaint States:

> 24.    The written map attached to the permit states, in relevant part:
> "Activities related to shows in the North and South Buildings must
> be held on the sidewalk between the pylons on Martin Luther King
> Drive".

ANSWER: Defendant states that the allegations of this paragraph are characterizations and
incomplete quotations of the Authority's policy on public expression at McCormick Place attached
to the complaint in this matter as Ex. G, which speaks for itself, and Defendants deny any
characterizations inconsistent with the written policy.

Paragraph 25 of the Complaint States:

> 25.    On or about August 28, 2003, CASPIAN member Liz
> McIntyre spoke by telephone with Fred Simon, a supervisor at
> McCormick Place. Mr. Simon provided to CASPIAN a copy of the
> aforementioned policy. Mr. Simon further advised Ms. McIntyre that
> the wearing of clothing that bears expressive messages would not be
> permitted within McCormick Place.

ANSWER: Defendants state that no answer to this paragraph is required because these allegations have become moot in light of the Court's resolution of plaintiff's motion for a TRO, and in particular, Defendants' clarification of their policy as regards message-bearing clothing made on the record at the TRO hearing. Further answering, Defendants state that apart from laws and local ordinances of general applicability governing matters such as public nudity, indecency and obscenity, the Authority does not enforce restrictions on the type of clothing worn at McCormick Place. In particular, the Authority does not prohibit members of the public from wearing message-bearing T-shirts, caps, buttons and the like at McCormick Place. Private licensors of space at McCormick Place, however, may set whatever dress codes they deem appropriate for their private event, such as requiring formal attire for an event at the Arie Crown Theater or corporate casual for a trade meeting.

Paragraph 26 of the Complaint States:

> 26.     Thus, as set forth in the foregoing three paragraphs, the MPEA has adopted and enforces a policy of banning all expressive activity (other than that controlled by the sponsors of private trade shows, expositions, and other similar events):
>
> > (a)     anywhere inside the McCormick Place buildings; and
>
> > (b)     anywhere in the outdoor areas adjacent to the McCormick Place buildings, with the narrow exception of "designated areas" hundreds of feet away from the facility and far from plaintiff's intended audience.

ANSWER: Defendants deny the allegations of paragraph 26.

Paragraph 27 of the Complaint States:

> 27.     On September 9, 2003, counsel for Ms. Albrecht sent a letter to the MPEA requesting permission for Ms. Albrecht and other members of CASPIAN to engage in the following expressive activities:

(a)     within the Grand Concourse: distributing leaflets, wearing clothing that states "Stop RFID", and engaging in public education; and

(b)     within Hall B-1: wearing clothing that states "Stop RFID".

ANSWER: Defendant states that the allegations of this paragraph are characterizations and incomplete quotations of a letter attached to the complaint in this matter as Ex. J, which speaks for itself, and Defendants deny any characterizations inconsistent with the letter.

Paragraph 28 of the Complaint States:

28.     On September 11, 2003, counsel for the MPEA sent a letter to counsel for Ms. Albrecht stating that other than private trade shows, expositions, and similar events, "the facility's interior is not otherwise open to the public for free expression". The letter further stated that the MPEA "restricts public expression on the facility's exterior to the designated areas identified in the permit application". The MPEA enclosed with this letter a copy of the written policy described above in Part IV(C).

ANSWER: Defendant states that the allegations of this paragraph are characterizations and incomplete quotations of a letter attached to the complaint in this matter as Ex. H, which speaks for itself, and Defendants deny any characterizations inconsistent with the letter.

Paragraph 29 of the Complaint States:

29.     Also on September 11, 2003, counsel for Ms. Albrecht spoke by telephone with counsel for the MPEA. Counsel for Ms. Albrecht asked whether the MPEA would allow any members of CASPIAN to engage in expressive activity in the area between Martin Luther King Drive and the U-shaped driveway fashioned McCormick Square, at any place closer to Gate 4 than at the pylons. Counsel for the MPEA answered in the negative.

16

ANSWER: Defendants admit that the allegations of this paragraph summarize the conversation described in this paragraph, without prejudice to Defendants' introducing sworn testimony about the details of the conversation in question.

Paragraph 30 of the Complaint States:

> 30. If the MPEA enforces its policy identified above in Part IV(C), Ms. Albrecht and the other members of CASPIAN will be unable to effectively communicate with their intended audience of participants in the EPC Symposium.

ANSWER: Defendants state that no answer to this paragraph is required because these allegations have become moot in light of the Court's resolution of plaintiff's motion for a TRO. Further answering, Defendants deny that Ms. Albrecht and others were or are unable to effectively communicate with their intended audience of participants in the EPC symposium as a result of the Authority's enforcement of its policy on free expression at McCormick Place. To the contrary, Defendants state on information and belief that plaintiff and others did, in fact, engage in expressive activity at McCormick Place on September 16, 2003.

Paragraph 31 of the Complaint States:

> 31. The adoption and enforcement of the MPEA's policy identified above in Part IV(C) imposes an unreasonable restriction on the First Amendment rights of citizens and groups like Ms. Albrecht to express their views on political, social and cultural issues.

ANSWER: Defendants deny the allegations of paragraph 31.

Paragraph 32 of the Complaint States:

> 32. Unless enjoined by this Court, the MPEA will continue to enforce the policy described above in Part IV(C).

17

ANSWER: Defendants admit the allegations of paragraph 32, without prejudice to the Authority's power as a public body to amend its policy at any time.

Paragraph 33 of the Complaint States:

> 33. Ms. Albrecht will suffer irreparable harm as a result of the MPEA's adoption and enforcement of the policy described above in Part IV(C).

ANSWER: Defendants deny the allegations of paragraph 33.

Paragraph 34 of the Complaint States:

> 34. Ms. Albrecht has no adequate remedy at law.

ANSWER: Defendants deny the allegations of paragraph 34.

Paragraph 35 of the Complaint States:

> 35. The adoption and enforcement of the policy described above in Part IV(C) violates the First Amendment to the United States Constitution, both on its face and as applied to the plaintiffs proposed expressive activity.

ANSWER: Defendants deny the allegations of paragraph 35.

## DEFENSES

1. Plaintiff's complaint fails to state a claim on which relief can be granted.

2. Plaintiff's complaint is substantially or entirely moot.

3. Plaintiff lacks standing to assert claims of others not before the Court. In particular, plaintiff cannot bring an "as applied" First Amendment challenge to the Authority's policies on behalf of others not before this Court as parties.

18

Dated: September 29, 2003

Respectfully submitted,

THE METROPOLITAN PIER AND
EXPOSITION AUTHORITY and
LETICIA PERALTA-DAVIS, CEO

Bettina Getz
Daniel G. Hildebrand
MAYER, BROWN, ROWE & MAW LLP
Chicago, Illinois 60603
(312) 782-0600

19

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he caused to be served a copy of the attached

**Answer** by messenger on September 29, 2003, before the hour of 6:00 p.m. on counsel for plaintiff

addressed as follows:

> Harvey Grossman
> Adam Schwartz
> The Roger Baldwin Foundation of ACLU, Inc.
> 180 North Michigan Avenue, Suite 2300
> Chicago, IL 60601

One of the attorneys for defendants

Bettina Getz
Daniel G. Hildebrand
David Fuller
MAYER, BROWN, ROWE & MAW LLP
Chicago, Illinois 60603
(312) 782-0600