**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KATHERINE ALBRECHT, and QUENTIN )
YOUNG, on behalf of themselves and all )
others similarly situated, )
           )
                   Plaintiffs, )     Case No. 03 C 6472
           )
      v. )     Magistrate Judge Denlow
           )
METROPOLITAN PIER AND )
EXPOSITION AUTHORITY, )
           )
                Defendant. )

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

This case is far simpler than plaintiffs make it out to be. Literally *no case* supports plaintiffs' contention that McCormick Place is a public forum. To the contrary, scores of cases about public convention and meeting facilities, performing arts complexes, sports stadiums, government office buildings and airports establish as a matter of law that McCormick Place is a non-public forum. No fact record need be developed in this case to support this conclusion. Plaintiffs' false premise about the nature of the forum undermines the remainder of their case.

When the correct legal standard is applied, plaintiffs' complaint should be dismissed on the pleadings for two reasons. First, the Authority's new public expression policy at McCormick Place is functionally identical to its policy at Navy Pier, which was enacted in compliance with a district court injunction entered after years of litigation. *Chicago Acorn v. Metropolitan Pier and Exposition Authority*, 150 F.3d 695 (7th Cir. 1998); Ex. D to opening motion (injunction dated 9/13/99). As a matter of law, Navy Pier is a non-public forum, governed by the same statutory

enabling legislation and legislative intent as McCormick Place. The policy at Navy Pier imposed by virtue of Judge Manning's injunction does *not* ensure that persons attending functions in the meeting rooms will be forced to confront leafleters. To the contrary, Navy Pier contains *no leafleting zones* outside that facility's substantial meeting rooms. This, without more, defeats plaintiffs' claim for relief in this case.

The second reason plaintiffs' complaint must be dismissed on the pleadings is that the case law on non-public forums unanimously rejects not only plaintiffs' legal theory, but also their specific claim for relief. There is simply no requirement that public entities must provide leafleting access to most visitors inside a non-public forum, as plaintiffs contend. Rather, the cases hold that *no* interior leafleting access is required at public convention and meeting facilities like the Las Vegas Convention Center, Navy Pier's meeting rooms or Boston's Fish Pier; at government office buildings like the Dirksen and Metcalfe buildings; at cultural facilities like the Denver Galleria; or at sports stadiums. A minority of cases have required accommodation of leafleting *somewhere* in certain multi-use public facilities, such as the dining and entertainment areas of Navy Pier, or near the chapel in a commercial airport like LaGuardia.

This is exactly what the Authority provided in its new policy at McCormick Place. By providing five interior leafleting zones, in addition to two large outdoor demonstration areas, the Authority has gone beyond what is required under the Constitution. Plaintiffs cannot point to a single case suggesting that the Authority is required to establish leafleting zones that reach many or most visitors to the facility. Under these circumstances, Seventh Circuit case law supports the dismissal of First Amendment cases on the pleadings because the case law and undisputed facts make clear that plaintiffs have no legal right to the relief they are claiming, and the Authority's policy is constitutional on its face.

## I.     This Case Is Appropriately Subject To Dismissal On The Pleadings.

As a threshold matter, this case is appropriate for resolution on the pleadings based on *Graff v. City of Chicago*, 9 F.3d 1309, 1323 (7th Cir. 1993) and *International Caucus of Labor Committees, et al. v. City of Chicago*, 816 F.2d 337, 339-340 (7th Cir. 1993). Plaintiffs argue this case is different, but a fair reading of *Graff* and *International Caucus* shows the opposite.

*Graff* affirmed dismissal on the pleadings of a constitutional challenge to the City's ordinance regulating newsstands. In reaching this outcome, the Seventh Circuit relied heavily on the City's well-established right under prior case law to regulate structures on the public way, regardless of any collateral impact on speech. It made no difference that this body of law was developed in factual contexts other than the street grid of downtown Chicago. So too, this Court can rely on cases involving the Las Vegas convention center, Navy Pier, the Denver Galleria, the Dirksen building, the Metcalfe building, Boston's Fish Pier and other non-public forums to hold as a matter of law that McCormick Place is a non-public forum.[1] This case law is so well-developed that the specifics of this particular setting are irrelevant to the constitutional result.

Similarly, in *International Caucus*, the Seventh Circuit affirmed the dismissal of a First Amendment challenge to O'Hare Airport's policy prohibiting tables, signs, and literature storage in the terminals. The court concluded based on case law reviewing similar (but not identical) time, place and manner restrictions at O'Hare that the constitutionality of restrictions on tables and signs simply was not subject to debate. That is exactly the situation here: this Court is faced with a written policy that was judicially reviewed at the Authority's other facility, namely Navy

---

[1]   *Hawkins v. City and County of Denver*, 170 F.3d 1281, 1287 (10th Cir. 1999); *Hampton Int'l Communications v. Las Vegas Convention and Visitors Auth.*, 913 F.Supp. 1402, 1410-1411 (D.Nev. 1996), *New England Regional Council of Carpenters v. Kinton*, 284 F.3d 9, 23 (1st Cir. 2002); *Sefick v. Gardner*, 164 F.3d 370, 372-373 (7th Cir. 1998); *Grossbaum v. Indianapolis-Marion County Building Auth.*, 100 F.3d 1287, 1299 (7th Cir. 1996); *ISKCon v. New Jersey Sports and Exposition Auth.*, 691 F.2d 155, 161 (3d Cir. 1982); *Hubbard Broadcasting, Inc. v. Metropolitan Sports Facilities Comm'n*, 797 F.2d 552, 555 (8th Cir. 1986).

3

Pier. The court in that case did *not* impose leafleting zones in the meeting area of Navy Pier. Moreover, the Second Amended Complaint's description of McCormick Place makes clear that any factual differences between the Authority's two facilities cut in favor of the Authority's power to impose greater speech restrictions at McCormick Place than exist at Navy Pier.

Dismissal on the pleadings is also more appropriate here than in *Graff* or *International Caucus* because those cases arose under the legal standard applicable to public forums, where the government's obligation to justify its interest is more demanding.[2] Here, by contrast, the Authority's challenged policy was promulgated by a single-purpose governmental entity at a non-public forum; it is only subject to review for reasonableness; and it was judicially approved for use at the Authority's Navy Pier facility after litigation that went on for years. It is hard to imagine a more fitting case to be disposed of on a motion to dismiss.

## II. Each Of Plaintiffs' Supposedly Disputed Factual Issues Is Illusory.

Plaintiffs urge that further discovery is needed in order to properly understand whether McCormick Place is a public forum, whether the zones for expressive activity created in the 2004 policy are adequate, and whether the Authority's interests in restricting speech within McCormick Place are sufficient to justify the boundaries it has drawn. (Pl. Br. 11-12.) In fact, however, there is no real dispute over the essential facts – only their legal import. As explained in the Authority's opening brief and below, this case can be resolved based on the factual allegations in the Second Amended Complaint, the Authority's policies at McCormick Place and Navy Pier, the Authority's enabling legislation, Judge Manning's injunction, and the controlling case law holding that broad interior leafleting access to many visitors is simply not required under the "reasonableness" legal standard applicable to non-public forums.

---

[2] The Seventh Circuit's opinion in *International Caucus* was issued before the Supreme Court held in *International Society for Krishna Consciousness v. Lee*, 505 U.S. 672, 679 (1992), that an airport is not a traditional public forum.

4

**A.  The Forum Status Of McCormick Place Cannot Be Fairly Debated.**

The basic attributes and uses of McCormick Place are not in dispute.  Plaintiffs and defendant agree with the description set forth in the complaint:  McCormick Place is a large convention, trade show and meeting facility containing numerous halls, lobbies and meeting rooms that are licensed to a variety of customers who host events addressing a wide array of topics.  Where the parties disagree – on the forum status – the case law cited in the Authority's opening brief supplies a clear and uniform answer:  a convention center is not a public forum.

This is established, first and foremost, by the Seventh Circuit's opinion in *Chicago Acorn*.  There, the court held that Navy Pier, a multi-purpose public shopping, entertainment and meetings facility, was a non-public forum in its entirety.  150 F.3d at 704.  There can be no dispute that, on the record presented to the Seventh Circuit, Navy Pier included a meetings facility (Festival Halls A and B and adjacent rooms) that was judged to be a non-public forum.  *Id.*; see 1998 WL 165882 (N.D. Ill. 1998).  On remand, moreover, after being reversed by the Seventh Circuit for her ruling splitting Navy Pier into different types of forums, Judge Manning declined to impose leafleting zones adjacent to the meeting rooms.  Ex. D to opening motion.  The *Chicago Acorn* case makes two crucial points that defeat plaintiffs' legal position here:  (1) first, McCormick Place cannot be broken into pieces, some of which are treated as public forums and some of which are treated as non-public forums; and (2) McCormick Place in its entirely is a non-public forum, because there is nothing in plaintiffs' complaint to suggest that it should be treated differently from Navy Pier.  At bottom, both facilities include meeting rooms adjacent to restaurants and entertainment venues, and the fact that the balance between these functions at each facility is different has no bearing on the outcome of the forum analysis.

It is beside the point that, as plaintiffs repeatedly argue, McCormick Place "exists to facilitate speech and expressive association at large gatherings." (Pl. Br. 10, 18.) The same can be said of the Dirksen building, a performing arts center like the Denver Galleria, or a sports stadium, each of which hosts expressive activities about at times controversial subjects such as, for example, individual liberty, German opera, or the merits of competing sports teams. All these venues are non-public forums, and for this reason, the presence of "expressive activity" at McCormick Place – particularly by paying licensees, who are the Authority's primary source of revenue and statutory reason for being – has no impact whatsoever on the forum analysis.[3]

It is also beside the point that McCormick Square is "a combination of sidewalks and parks, two archetypical kinds of traditional public forums." Pl. Br. 15. At least since *United States v. Kokinda*, 497 U.S. 720, 729-730 (1990), outdoor sidewalks have had nothing to do with whether a facility is a public forum. Any doubts on this point are resolved by *Hampton*, 913 F.Supp. at 1410-1411, which held that the outdoor walkways of the Las Vegas Convention Center were non-public forums. *Accord, Henderson v. Lujan*, 964 F.2d 1179, 1182 (D.C. Cir. 1992) (interior sidewalks of Viet Nam war memorial were not a public forum); *Jacobsen v. Bonine*, 123 F.3d 1272, 1274 (9th Cir. 1997) (interstate rest areas sidewalks were not a public forum); *United States v. McCoy*, 866 F.2d 826, 830-832 (6th Cir. 1989) (military base driveway was not a public forum).

Likewise, the presence of park-like amenities such as benches, trees and open space in McCormick Square are legally irrelevant. According to the Seventh Circuit, "Pier Park" and the

---

[3] *See fn. 1, supra. See also Embry v. Lewis*, 215 F.3d 884, 888 (8th Cir. 2000) (rejecting claim that middle school used as a polling place on election day must be a public forum, since "[o]nly a portion" of the facility was being used "for the limited purpose of voting" and "[a]ll other areas of the school property * * * remained a nonpublic forum"); *Crowder v. Housing Authority of the City of Atlanta*, 990 F.2d 586, 591 (11th Cir. 1993) (rejecting public forum status of public housing project despite presence of library and auditorium that "was a limited public forum for tenants"); *Hedges v. Wauconda Community Unit Sch. Dist. No. 118*, 9 F.3d 1295, 1301 (7th Cir. 1993) (holding that a public junior high school is a nonpublic forum).

Crystal Gardens on Navy Pier contained similar features, yet this did not deter the court from holding that Navy Pier in its entirety was a non-public forum (thus overruling Judge Manning's initial opinion to the contrary). *Chicago Acorn*, 150 F.3d at 698, 704; *see* 1998 WL 165882.

Plaintiffs likewise fail to provide coherent support for their position that certain interior areas of McCormick Place are a public forum. Most obviously, plaintiffs fail to distinguish *Chicago Acorn*'s holding requiring that the forum status of Navy Pier should be resolved for the entire facility, not broken into pieces. Plaintiffs also fail to distinguish *Hampton*, 913 F.Supp. 1402, which is arguably the most factually apposite case since it upheld a leafleting ban at a major, publicly-owned convention center. Plaintiffs weakly suggest that the present case is different because the Las Vegas Convention Center's walkways were created for the purpose of managing the heavy pedestrian traffic associated with conventions and trade shows. (Pl. Br. 17.) Yet that description applies equally to McCormick Place. Plaintiffs also attempt to distinguish *Hawkins*, 170 F.3d at 1284, 1287, 1291, on the basis that Denver's Galleria "functions solely as the only entry and lobby of a performing arts complex" and therefore can at times become "extremely crowded." (Pl. Br. 16.) But again this is no different from McCormick Place, which according to the Second Amended Complaint at times accommodates large crowds in its lobbies and interior concourse.

Finally, it makes no difference that plaintiffs now suggest that McCormick Place is not "a discrete, outlying segment or projection of Chicago" like Navy Pier, but rather "is part of the City's transportation grid." (Pl. Br. 10.) This is contrary to plaintiffs' prior assertions, where they claimed to need access in part because McCormick Place was not bounded by streets and sidewalks where demonstrators could be seen. Plaintiffs are grasping at straws. At bottom, the differences between Navy Pier and McCormick Place have no bearing on the forum analysis:

7

both contain meeting facilities, restaurants, performance halls and public art; both are owned and operated by the Authority pursuant to the same enabling legislation; both were established by the Illinois legislature to promote jobs and economic development in the Chicago and Illinois; and both license space to collect revenue from paying customers and visitors. In short, both are non-public forums under unambiguous cases cited in the Authority's opening brief and above.[4]

### B. The Adequacy Of The Speech Zones At McCormick Place Is Not Subject To Legitimate Dispute.

As the Authority explained in its opening brief (Mot. to Dism. 11-15), once the forum question is resolved, the standard for reviewing the Authority's policy on public expression is permissive and minimally burdensome to the government. Simply put, the Authority is entitled to make its own judgment about where people may leaflet so long as that judgment is reasonable. *Perry Educ. Assoc. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 (1983); *Cornelius v. NAACP Legal Defense Educ. Fund, Inc.*, 473 U.S. 788, 803 (1985); *Grossbaum v. Indianapolis-Marion County Building Auth.*, 100 F.3d 1287, 1299 (7th Cir. 1996) (noting that the government's restrictions need not be the "most reasonable or only reasonable limitation").

The case law cited above and in the Authority's opening brief makes clear that business or special use facilities such as public meeting centers, federal office buildings, performing arts complexes and sports stadiums need not be opened to interior leafleting because that is not consistent with the nature and purpose of such facilities. This same case law establishes that *no leafleting zones* were required at the Las Vegas convention center, in the meeting areas of Navy Pier, in the Denver Galleria, or at Fish Pier in Boston. The Authority has therefore gone beyond

---

[4]    Justice O'Connor's description in *Lee* of the "multipurpose environment" of the airport, quoted at length by plaintiffs (at 24, quoting 505 U.S. at 688), squarely refutes any need to resolve the vast majority of the supposed factual disputes plaintiffs claim are relevant to the forum status of McCormick Place. Justice O'Connor, of course, found the airport in *Lee* to be a *non-public* forum.

constitutional requirements by putting several leafleting zones in the heart of its facility. One of these is literally on McCormick Place's "main drag," so to speak: just off the walkway leading from the skybridge over Lakeshore Drive to the Grand Concourse. Another is on one end of the food court, a similarly centrally located high traffic area. This is far more than the level of leafleting access approved by Justice O'Connor in *ISKCON v. Lee*, where she suggested that a leafleting zone near the airport chapel was constitutional at LaGuardia. 505 U.S. at 692-693.

This controlling case law makes the factual points raised by plaintiffs legally irrelevant. For example, plaintiffs complain that Quentin Young and his associates could not "effectively communicate with conference visitors," despite the fact that they were able to distribute more than 200 leaflets during a single 90-minute event. (Cplt. ¶ 43; Pl. Br. 7.) From this it is clear that plaintiffs' definition of "reasonable" requires that *they* get to determine the time, place and manner in which they may distribute leaflets inside McCormick Place – which is not how the law works for non-public forums. Plaintiffs also complain that "[m]any people who did not pass the five approved locations" at which Young and his associates passed out leaflets *did* pass by other "forbidden locations" that plaintiffs had hoped to use. (Pl. Br. 7.) But this would be true of *any* five, ten or twenty zones inside McCormick Place: no matter how much access one has, one can always point out that other places are not available. The lack of leafleting in many parts of a facility does not mean the existing areas are unreasonable.

Reduced to its essentials, plaintiffs' objection to McCormick Place's new free expression policy is summed up by their bald assertion that "the vast majority of visitors at the vast majority of events will not see or hear the messages expressed by non-licensees" at McCormick Place. (Pl. Br. 23.) Even assuming that the "vast majority" of visitors to McCormick Place would never pass any of the seven zones created by the Authority's new policy (which seems dubious on its

9

face), this fact is legally irrelevant because the case law nowhere requires this level of access for leafleting in a non-public forum. To the contrary, the Navy Pier, Las Vegas, Denver Galleria and LaGuardia cases all make clear that it is *not* required. *ISKCON v. Lee*, 505 U.S. at 692-693; *Hampton, supra; Chicago Acorn, supra, Hawkins, supra.*

### C. The Authority's Interests Are Not Subject To Legitimate Dispute.

As articulated in McCormick Place's new policy on public expression, the Authority's interest in that policy is straightforward: it has been charged with creating and maintaining a desirable venue to compete successfully in the international market for conventions, trade shows and exhibitions. In order to maintain McCormick Place as a professional, attractive, clean and orderly facility that is safe and conducive to the business needs of its customers, the Authority has determined that expressive activity should be limited to the zones described in the policy. Mot. To Dism. Ex. B at 2. Allowing protesters or leafleters elsewhere in or around the facility would, in the Authority's judgment, adversely affect its business.

Plaintiffs are wrong to assert that the Seventh Circuit in *Acorn* "implicitly acknowledged that leafleting does not burden the MPEA's economic interest in attracting customers." (Pl. Br. 10.) To the contrary, the *Acorn* court explained that the scope of the right to leaflet at Navy Pier would be subject to "a sliding-scale approach * * * in which the benefits *and costs* of free speech are balanced in particular settings." 150 F.3d at 703 (emphasis added). This is precisely the standard that guided the district court on remand, and which led to the policy on expressive activity at Navy Pier that the Authority has now used as a model for its policy on expressive activity at McCormick Place. That policy, it bears repeating, *did not impose leafleting zones in outside the meeting areas of Navy Pier*. Thus, in addition to conserving government resources,

dismissing this case now is in accordance with a prior judicially-sanctioned process in which the real interests and burdens balanced in the Authority policy were already taken into account.

Plaintiffs' suggestion (at 14) that "the Supreme Court has regularly struck down restrictions on leafleting" is beside the point. The cases they cite involved either outright "bans" or broad ordinances applicable to such practices as door-to-door leafleting, *Watchtower Bible and Tract Society v. Village of Stratton*, 536 U.S. 150 (2002), or flat bans on leafleting in any public place. *Lovell v. City of Griffin*, 303 U.S. 444, 452 (1938). While McCormick Place's prior policy prohibited all leafleting inside McCormick Place, under the current policy there is no longer a "ban" at all – rather, leafleters are simply required to obtain a permit and confine their activity to the zones described in the policy. This is perfectly consistent with the case law. It is well settled that the government may impose reasonable limits on leafleting even in *public* forums, see *Kinton*, 284 F.3d at 27, and therefore it may also do so in non-public forums such as the interior of McCormick Place as well.

**III.    All Questions About The Prior Policy Have Become Moot.**

Plaintiffs' efforts to save their claims concerning the obsolete 2001 policy are unconvincing. Notwithstanding the presumption of "genuineness" in favor of government decisions to supersede prior policies, they insist that there is a basis for expecting the Authority to re-enact the 2001 policy. (Pl. Br. 29.) The Authority, however – which has no history of engaging in multiple reversals or enacting illusory rules – has explained its reasons for adopting the 2004 policy, and those reasons warrant deference under the case law. See *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988) (a governmental entity's decision to voluntarily repeal a challenged policy merits "more solicitude" from the court than would "similar action by

11

private parties"). In order to create a "reasonable expectation" of reenactment, more is needed than mere suspicion based on the legal positions the Authority has taken in this litigation.

Nor is it accurate to say that the Authority's motive of avoiding litigation expenses "will cease to exist if plaintiffs' injunctive claim is dismissed as moot." (Pl. Br. 29.) To the contrary, if plaintiffs' challenge to the 2001 policy is dismissed on mootness grounds, then any reenactment of that prior policy (or one substantially similar to it) could very well justify a revival of plaintiffs' initial claim – a circumstance that would obviously lead to further litigation expenses, which the Authority continues to have every incentive to avoid.

Finally, plaintiffs claim that "Albrecht has pending claims for damages" based on application of the 2001 policy. (Pl. Br. 30.) But Albrecht's prayer for relief for damages was not added to the complaint until *after* the Authority amended its policy, and *after* it moved to dismiss the case as moot. Plaintiffs should not be permitted to keep their claim alive by means of an after-the-fact amendment to their complaint that plainly has no purpose other than as an attempt to defeat mootness. *Boucher v. Syracuse University*, 164 F.3d 113, 118 (2d Cir. 1999) ("A request for damages, however, will not avoid mootness if it was inserted after the complaint was filed in an attempt to breathe life into a moribund dispute.").

DATED: September 14, 2004

Respectfully Submitted,

METROPOLITAN PIER AND
EXPOSITION AUTHORITY

By: _____
    One of its Attorneys

Bettina Getz
Daniel Hildebrand
David Fuller
Mayer, Brown, Rowe & Maw LLP
190 South LaSalle Street
Chicago, Illinois 60603
(312) 782-0600

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certify that on the 14th day of September, 2004, I caused to be served to the parties listed below a true and correct copy of the attached **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** via U.S. Mail, postage prepaid, before the hour of 6:00 p.m., addressed to counsel as follows:

TO:   Harvey Grossman
Adam Schwartz
Connie Chung
Roger Baldwin Foundation of ACLU, Inc.
180 North Michigan Avenue, Suite 2300
Chicago, Illinois 60601
(312) 201-9740

William J. Gibbons
Erin Shaw
David Campbell
Latham & Watkins
233 S. Wacker Drive, Suite 5800
Chicago, Illinois 60606
(312) 876-7700

By: _____
One of Defendant's Attorneys

Bettina Getz
Daniel Hildebrand
David Fuller
Mayer, Brown, Rowe & Maw LLP
190 South LaSalle Street
Chicago, Illinois 60603
(312) 782-0600