# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6472 | **DATE** | 10/1/2004 |
| **CASE TITLE** | Albrecht, et al. vs. Metropolitan Pier and Exposition Authority | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss Plaintiff's second amended class action complaint [31-1] is denied

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 0 4 2004 | |
| | Notified counsel by telephone. | | date docketed | 41 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 10/1/2004 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| DK | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 2004 OCT -1 PM 4: 35 Date/time received in central Clerk's Office | DK6 mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KATHERINE ALBRECHT and )
QUENTIN YOUNG, on behalf of )
themselves and all others similarly )
situated, )
     )
         Plaintiffs, )     Case No. 03 C 6472
     )
         v. )     Magistrate Judge Morton Denlow
     )
METROPOLITAN PIER AND )
EXPOSITION AUTHORITY, )
     )
         Defendant. )

**DOCKETED**

OCT 0 4 2004

## MEMORANDUM OPINION AND ORDER

This case comes before this Court on Defendant Metropolitan Pier and Exposition Authority's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint. Plaintiffs Katherine Albrecht and Quentin Young ("Plaintiffs") assert a constitutional challenge against the Metropolitan Pier and Exposition Authority's policies regarding First Amendment activity at McCormick Place, a large convention center located near downtown Chicago. The issue to be decided is whether Plaintiffs have failed to state a claim upon which relief can be granted. For the reasons stated herein, Defendant's motion to dismiss is denied.

# I. BACKGROUND FACTS[1]

On July 8, 2004, Plaintiffs Katherine Albrecht ("Albrecht") and Quentin Young ("Young") filed a Second Amended and Supplemental Class Action Complaint ("Compl.") against the Metropolitan Pier and Exposition Authority ("MPEA"), the state unit that owns, operates, and controls McCormick Place. Compl. ¶¶ 1, 6-8. Plaintiffs allege that the MPEA has violated the First Amendment of the United States Constitution pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 2201 *et seq.*, by adopting and enforcing two policies that restrict expressive activity inside and outside of McCormick Place by non-licensees. Compl. ¶¶ 1-2. Albrecht and Young seek declaratory and injunctive relief as well as damages. Compl. ¶ 1.

## A. McCORMICK PLACE

McCormick Place is a large convention center located near downtown Chicago that is visited by over four million people per year. Compl. ¶¶ 13,15. McCormick Place is comprised of the Lakeside Center east of Lake Shore Drive, the Grand Concourse, North Building, and South Building west of Lake Shore Drive. Compl. ¶ 14. These buildings contain approximately 2.2 million square feet of exhibition space, 112 meeting rooms, three theaters, and seating for 10,000 people. *Id.* The Grand Concourse is open to the public,

---

[1] The facts set forth herein are taken from the Second Amended Complaint, whose factual allegations are assumed true for purposes of this motion, and also from publicly available policies of which this Court takes judicial notice. *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000) (holding that a court may consider documents subject to judicial notice on a motion to dismiss).

contains a Metra train stop, restaurants, stores, and works of art. *Id.*

The MPEA licenses McCormick Place's exhibition and meeting rooms to a wide array of customers, who gather to communicate about a wide variety of subjects. Compl. ¶ 15. Some of McCormick Place's customers use the facility to discuss a myriad of important public issues. *Id.* The MPEA has promulgated two written policies regarding expressive activities by "non-licensees" at McCormick Place. Compl. ¶¶ 17, 34. The first, created in 2001, prohibited all forms of expressive activity in the interior spaces of McCormick Place, but allowed two areas for non-licensees outside of the buildings. Compl. ¶ 17, 19. The second policy, adopted in 2004, replaced the 2001 policy and allowed non-licensees to engage in expressive activity in the same two outdoor areas but added five indoor locations. Compl. ¶ 34.

## B.  THE MPEA'S 2001 POLICY

On October 1, 2001, the MPEA promulgated a written policy regarding expressive activities by non-licensees at McCormick Place (the "2001 policy"). Compl. ¶ 17. This policy limited "First Amendment expression" by non-licensees to two outdoor designated areas ("Designated Areas 1 and 2"). *Id.* "First Amendment expression" was defined as including but not limited to: "literature distributions, signature solicitation and picketing." *Id.* Designated Area 1 was outside and 103 feet from Gate 30 of the Lakeside Center. Compl. ¶ 22. Designated Area 2 was on the western edge of McCormick Square and 279 feet away from Gate 4 (the main entrance into the facility). Compl. ¶ 23.

3

## C.   THE MPEA'S APPLICATION OF ITS 2001 POLICY AGAINST PLAINTIFF ALBRECHT

Albrecht, the founder and director of Consumers Against Supermarket Privacy Invasion and Numbering ("CASPIAN"), requests relief regarding an incident that occurred under the MPEA's 2001 policy. Compl. ¶¶ 24-33. In September of 2003, Albrecht and CASPIAN decided to protest the Electronic Product Code Symposium which took place in McCormick Place's North Building meeting rooms and exhibition halls on September 15 through 17, 2003. Compl. ¶ 25-26. The subject of the conference was the development of Radio Frequency Identification ("RFID") technology, which is used to tag and to track individual consumer products. Compl. ¶ 24. Albrecht and CASPIAN members oppose business practices such as RFID usage, which they believe invade consumer privacy. *Id.*

On September 9, 2003, Albrecht requested permission from the MPEA to allow Albrecht and CASPIAN members to distribute leaflets, wear expressive clothing, and engage in public education within the Grand Concourse. Compl. ¶ 29. Albrecht's request was denied by the MPEA and she was informed that other than for private trade shows, expositions and similar events, "the facility's interior is not otherwise open to the public for free expression." Compl. ¶ 30. Albrecht filed a lawsuit on September 12, 2003, requesting equitable relief declaring the 2001 policy unconstitutional and enjoining the MPEA from restricting her and like-minded persons to the Designated Areas. On September 15, 2003, Albrecht requested this Court to enter a temporary restraining order against the MPEA, enjoining it from enforcing its policy against Albrecht and other CASPIAN members. This

Court denied Albrecht's request for a temporary restraining order against the MPEA, however, the MPEA did permit Albrecht to wear expressive clothing inside McCormick Place. Compl. ¶ 32. In addition, the Court allowed Albrecht to pass out business cards inside McCormick Place. Albrecht and 20 to 25 others went ahead with the protest on September 16, 2003, but claimed that during the two hours they were at Designated Area 2, very few visitors walked near them. Compl. ¶ 33.

On April 22, 2004, Albrecht moved for leave to file an amended complaint. The amended complaint alleged that Designated Areas 1 and 2 were inadequate venues for expressive activities. The amended complaint sought class relief on behalf of all others seeking to engage in expressive activity at McCormick Place. In connection with the amended complaint, Albrecht filed a motion for class certification. This motion has been stayed, pending the outcome of Defendant's current motion to dismiss. The claims articulated in Plaintiffs' first amended complaint have been incorporated into Plaintiffs' most recent second amended complaint. Compl. ¶¶ 17-33. However, Plaintiffs' now seek damages in addition to the declaratory and injunctive relief sought in the earlier complaints. Compl. ¶ 1, 21.

## D.    THE MPEA'S 2004 POLICY

Effective June 30, 2004, the MPEA adopted a new written policy regarding expressive activity by non-licensees at McCormick Place (the "2004 policy"). Compl. ¶ 34. The 2004 policy retains the 2001 policy's Designated Areas 1 and 2 but also includes 5 indoor locations. *Id.* These five indoor areas are 3' x 6' or 3' x 9' and are scattered throughout the

5

McCormick Place buildings. Compl. ¶¶ 37-41. Plaintiffs now allege that the two outdoor areas and five indoor areas are "wholly inadequate venues for expressive activities by non-licensees." Compl. ¶ 42.

Upon implementation of its 2004 policy, the MPEA moved to dismiss the Plaintiffs' First Amended Complaint as moot because the old 2001 policy was no longer in effect. On June 23, 2004, Defendant agreed to withdraw its motion to dismiss upon Plaintiffs' representation that they would file a second amended complaint.

On July 8, 2004, this Court granted Plaintiffs' motion for leave to file their second amended and supplemental class action complaint. In their second amended complaint, a second plaintiff, Quentin Young, was added. Compl. ¶ 7. Plaintiffs also included claims for equitable relief and damages arising out of the MPEA's implementation of the 2004 policy. Comp. ¶¶ 34-53.

## E. THE MPEA'S APPLICATION OF ITS 2004 POLICY AGAINST PLAINTIFF YOUNG

Plaintiff Young requests relief regarding an incident in July, 2004 relating to the MPEA's 2004 policy. Young and his associates requested permission of the MPEA to stand in non-designated areas and pass out leaflets about universal health care to persons attending the American Physical Therapy Association conference on July 3, 2004. Compl. ¶¶ 43-46. The MPEA denied Young's request and, as a result of the MPEA's refusal, Young was restricted to passing out leaflets in the designated areas under the 2004 policy. Compl. ¶¶ 47-49. Young claims the designated areas in the 2004 policy limited his access to only a small

percentage of those individuals attending the conference. Compl. ¶¶ 50-52. Young asserts that as a result of the MPEA's application of the 2004 policy he and his associates were "unable to effectively communicate with the vast majority of their intended audience." Compl. ¶ 53. Young and the other Plaintiffs seek injunctive and declaratory relief, as well as damages. Compl. ¶ 1.

## II. DISCUSSION

Defendant MPEA makes two principle arguments as to why Plaintiffs' Complaint should be dismissed. First, the MPEA argues that Plaintiffs' Complaint should be dismissed because the MPEA's 2004 policy is constitutional on its face and there is no "colorable basis" for attacking the MPEA's 2004 policy. The MPEA argues that prior case law has firmly established that the MPEA's new policy is constitutional on its face and, therefore, it should not be subjected to further litigation. Mot. to Dismiss at 10-15. Second, the MPEA attacks the portion of the Plaintiffs' Complaint which challenges the 2001 policy. The MPEA argues that because the 2001 policy no longer exists, the Plaintiffs' claims with regard to that policy should be dismissed as moot. Mot. to Dismiss at 15-17.

### A. MOTION TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit. *Autry v. Northwest Premium Svs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). In deciding a motion to dismiss, all well-pleaded allegations in the complaint are accepted as true. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984).

Ambiguities in the complaint are construed in favor of the plaintiff. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Therefore, dismissal of the claims is proper only when it appears beyond doubt that the plaintiff can prove no set of facts to support his claim. *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957).

## B. STANDARD OF REVIEW FOR FIRST AMENDMENT POLICIES

The First Amendment to the United States Constitution forbids Congress from making laws "abridging the freedom of speech." U.S. CONST. amend. I. The Due Process Clause of the Fourteenth Amendment similarly forbids the States from enacting and enforcing such laws. U.S. CONST. amend. XIV, § 1. The constitutionality of a government policy restricting speech is reviewed by applying the appropriate standard of review. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983).

There are three steps a court must take when determining what standard of review applies to a government regulation of expressive activity on public property. First, a court must determine whether the relevant areas of the property constitute "traditional public," "designated public" or "non-public" fora. *Perry Educ. Ass'n,* 460 U.S. at 44-46. Second, the court must determine whether the government's policy is a content based or a content neutral restriction on free expression. *See Ayres v. City of Chicago*, 125 F.3d 1010, 1014 (7th Cir. 1997). Third, a court will follow Supreme Court precedent and determine, based on the type of forum and the type of government regulation, the standard of review that will apply. *Perry Educ. Ass'n,* 460 U.S. at 45-46.

8

For example, in order for the government to enforce a content based restriction in a public forum, it must show that its regulation is "necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id.* at 45. On the other hand, for the government to enforce a content based or a content neutral restriction in a non-public forum, the regulation on expressive activity must merely be "reasonable in light of the purpose of the forum and all the surrounding circumstances." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 809 (1985); *Perry Educ. Ass'n*, 460 U.S. at 46.

## C. THE MPEA'S 2004 POLICY REQUIRES ADJUDICATION OF SITE-SPECIFIC FACTS

The first issue is whether the MPEA's 2004 policy is constitutional on its face or whether it requires site specific adjudication. The Defendant relies heavily upon a Seventh Circuit case, *Graff v. City of Chicago*, where a constitutional challenge to a city ordinance was dismissed at the pleadings stage for failure to state a claim. 9 F.3d 1309, 1323 (7th Cir. 1993) (en banc).[2] In *Graff* the plaintiff was challenging the constitutionality of a city ordinance that required permits for erecting newsstands on public sidewalks. *Id.* at 1311. The court held: "[w]here the courts have already upheld a similar ordinance because of the governmental interests at stake, a future litigant should not be able to challenge similar

---

[2] It is important to note that the Seventh Circuit concluded that *Graff* did not involve a First Amendment issue. *See Graff*, 9 F.3d at 1313 ("Contrary to Graff's contentions about speech, this case involves a structure. Graff has no First Amendment right to build a structure on public property."). Therefore, this Court relies on *Graff* only for the narrow holding discussed here.

governmental interests without showing some distinction at the pleading stage." *Id.* Although the court stated that the "norm" is to wait until the summary judgment stage to discover whether an ordinance should stand, it found no error in dismissing the case when there was no distinction between the present action and previous cases challenging similar ordinances. *Id.* at 1322-33.

Defendant also relies upon another Seventh Circuit decision, *International Caucus of Labor Committees v. City of Chicago*, 816 F.2d 337 (7th Cir. 1987), for the proposition that a constitutional attack on an ordinance may be dismissed at the pleadings stage if similar ordinances have already been found to be constitutional. *Id.* at 340. In *International Caucus*, the plaintiffs challenged the constitutionality of regulations at O'Hare International Airport that prohibited the erection of structures, carrying of large signs, and storing of literature in public areas. *Id.* at 338-39. The court affirmed the district court's decision to grant the defendant City's motion to dismiss for several reasons. *Id.* at 339-40. First, one of the regulations was almost identical to a regulation previously found to be constitutional in *International Society for Krishna Consciousness, Inc. v. Rochford*, 585 F.2d 263, 270 (7th Cir. 1978). *Int'l Caucus*, 816 F.2d at 339. Second, the other regulations were not plainly based upon the content or subject matter of speech. *Id.* Last, the court found that all of the regulations clearly served a significant government interest. *Id.* at 340.[3]

---

[3] The *International Caucus* decision was not unanimous. Judge Cudahy dissented from the majority, saying: "[t]his seems to be one of those close cases where a dismissal of the complaint is made to do the work of summary judgment." *Int'l Caucus*, 816 F.2d at 341 (Cudahy, J., dissenting).

The MPEA poses the issue of whether the 2004 policy is constitutional on its face or whether it requires adjudication of site specific facts in two separate arguments. First, the MPEA argues that the complaint can be dismissed based purely on the precedent of *Chicago Acorn v. Metro. Pier and Exposition Authority*, 150 F.3d 695 (7th Cir. 1998). Alternatively, the MPEA suggests that the complaint should be dismissed based upon a comparison with several other first amendment cases. This Court addresses these two arguments separately.

1.   *Chicago Acorn v. Metropolitan Pier and Exposition Authority Does Not Require Dismissal of Plaintiffs' Complaint.*

Applying the reasoning in *Graff* and *International Caucus*, the MPEA first argues that Plaintiffs' challenge to the MPEA's 2004 policy can be rejected as a matter of law under the Seventh Circuit's holding in *Chicago Acorn v. Metropolitan Pier and Exposition Authority*, 150 F.3d 695 (7th Cir. 1998). *Chicago Acorn* involved the same defendant, the MPEA, and a similar constitutional challenge to the MPEA's First Amendment policies regarding Navy Pier, another Chicago attraction run by the MPEA. Navy Pier is an old navy facility that has been transformed into a recreational and commercial center. *Chicago Acorn*, 150 F.3d at 698. The Pier is now "part park, part meeting and exhibition facility, part shopping emporium, and amusement park." *Id.* The Seventh Circuit found that Navy Pier was a non-public forum but that the MPEA's then-existing policy regarding First Amendment speech was unreasonable. *Id.* at 700, 704. Upon remand, the district court issued a permanent injunction order instructing the MPEA to allow leafleting in six different zones. *Chicago Acorn v. Metro. Pier and Exposition*, No. 96 C 4997, 1999 WL 413480 (N.D. Ill. 1999)

(instructing the parties to submit maps and proposals for the permanent injunction).

The MPEA first reasons that because McCormick Place is a "more austere, business-oriented" place than Navy Pier, McCormick Place is certainly a non-public forum. Mot. to Dismiss at 11. Therefore, the MPEA reasons, a court considering the constitutionality of the MPEA's First Amendment policy at McCormick Place will only need to determine if the policy is "reasonable." *Id.* (citing *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)). Because the MPEA has recently changed its policy at McCormick Place to allow six zones for leafleting, identical to the policy at Navy Pier, it argues that the judicial resolution of the *Chicago Acorn* litigation makes the McCormick Place policy reasonable.

Plaintiffs dispute that dismissal is required under *Acorn*. First, Plaintiffs disagree with the MPEA's conclusion that McCormick Place is a non-public forum. Second, Plaintiffs dispute that the policy adopted for Navy Pier under *Chicago Acorn* is substantially the same as the new policy at McCormick Place. Plaintiffs note that the policy at Navy Pier allows demonstrators to communicate with every single person who enters the Pier because one of the leafleting zones is located at "Gateway Park" - the only entrance to the Pier. Plaintiffs maintain that the Seventh Circuit heavily relied upon this fact when approving the Navy Pier policy. *See Chicago Acorn*, 150 F.3d at 703. In contrast, the McCormick Place policy does not grant demonstrators access to everyone who enters McCormick Place. Plaintiffs reason that the MPEA's policies regarding Navy Pier and McCormick Place are not "virtually

identical" as required under *Graff*, and therefore *Chicago Acorn* does not mandate a dismissal of this case as a matter of law.

a. **There Exists a Distinction Between This Case and *Chicago Acorn* Based Upon the Forum Analysis**

Applying the *Graff* and *International Caucus* standard, this Court finds that there exists at least "some distinction" at the pleadings stage between the policy at issue in this suit and the policy at issue in the *Chicago Acorn* case. The *Chicago Acorn* case will likely be relevant to the eventual outcome of this suit. However, at this time, this Court is not in possession of sufficient facts to determine whether, as a matter of law, McCormick Place is a public or a non-public forum. The mere assertion that McCormick Place is more "business oriented" than Navy Pier is not a sufficient basis for this Court to determine that the entirety of McCormick Place is non-public. Even if parts of McCormick Place are deemed to be non-public, other parts may be public, as in the case of Navy Pier. *See Chicago Acorn,* 150 F.3d at 703 (noting that although the pier itself was not a public forum, the park at the entrance was).

Navy Pier and McCormick Place have different physical characteristics, different purposes and uses, and are of vastly different sizes. These factors alone create a distinction between *Chicago Acorn* and this case. Unlike in *Graff* and *International Caucuses*, the forum at issue (McCormick Place) has not already been determined to be public or non-public. The fact that Navy Pier is a non-public forum does not establish as a matter of law

that McCormick Place is a non-public forum. Furthermore, the conclusion reached with respect to Navy Pier was made on the basis of a comprehensive factual record, not at the motion to dismiss stage.

> **b.    Even if McCormick Place is a Non-Public Forum, the Reasonableness Inquiry Prevents Dismissal.**

Even if this Court were to conclude that McCormick Place is a non-public forum, the inquiry would not end there. Merely because a venue has been categorized as a non-public forum "does not mean that the government can restrict speech in whatever way it likes." *Int'l Soc'y for Krishna Consciousness, Inc* ("*ISKCON*"), 505 U.S. 672, 687 (1992). Indeed, the standard of review for a non-public forum is that the government's regulation on expressive activity must be "reasonable in light of the purpose of the forum and all the surrounding circumstances." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 809 (1985). Thus, as the Supreme Court stated in *ISKCON*, the determination that a venue is a non-public fora only begins the inquiry. *ISKCON*, 505 U.S. at 687.

If a court determines that a facility is a non-public forum, it must determine the reasonableness of a policy based on several factors (*i.e.*, it cannot rely on single factors such as whether a non-public forum is a multi-purpose facility). *ISKCON*, 505 U.S. at 690 (O'Connor, J., concurring). Thus, the court must weigh all of the factors that point in favor of allowing speech against those that support the need for restrictions. *Id.* In *Chicago Acorn*, the Seventh Circuit described the reasonableness inquiry as a "sliding scale," where

a court must weigh the benefits and costs of free speech while taking into account the particular features of the forum at issue. *Chicago Acorn,* 150 F.3d at 703.

Based upon the intricacies of this analysis, at this time this Court is not able to determine whether the 2004 policy is "reasonable" as applied to McCormick Place. Plaintiffs claim that the 2004 McCormick Place policy does not allow nearly as much public contact as the Navy Pier policy. For instance, Plaintiffs assert that the policy at Navy Pier allows them to come into contact with every visitor of the Pier; in contrast, they assert that the 2004 policy at McCormick Place only allows them to come into contact with a small percentage of visitors.

In the present case, this Court must eventually weigh the benefits to Plaintiffs of being able to access areas of McCormick Place they cannot currently access under the 2004 policy against the interests of the MPEA. During this analysis, the specific attributes of McCormick Place will be taken into account. Because McCormick Place is a large and unique facility, used for many different purposes (parts of McCormick Place are used as meeting facilities while other parts allow visitors to shop and catch public transportation), this Court anticipates that a detailed factual inquiry will be necessary.

The question of whether McCormick Place is a non-public forum and the comparison between the McCormick Place and Navy Pier policies are two issues that are not properly decided based only upon the pleadings.[4] When taking all of the well pleaded allegations in

---

[4] *See* cases cited *infra* note 5.

the complaint in the light most favorable to the Plaintiffs, this Court cannot dismiss this case based upon the similarities of the 2004 policy with the policy at issue in *Chicago Acorn*.

### 2.  Other First Amendment Cases Cited by Defendant Do Not Support a Dismissal at the Motion to Dismiss Stage.

The MPEA next argues that even if the *Chicago Acorn* case alone is not a sufficient basis to dismiss the Plaintiffs' complaint, all other case law in the first amendment area support a finding that the MPEA's McCormick Place policy is constitutional on its face. Defendant MPEA cites numerous cases from many different federal circuits to support its conclusion that there is "no reported decision suggesting that [MPEA] can be compelled to do more than offer a handful of leafleting zones inside its facility." Mot. to Dismiss at 13-15. For example, the MPEA cites a Tenth Circuit decision, *Hawkins v. City and County of Denver*, 170 F.3d 1281 (10th Cir. 1999), which held that the Denver Galleria, a facility designed to link performing arts complexes, was a non-public forum where leafleting could be constitutionally banned.

Plaintiffs first argue that the cases cited by the Defendant are not clearly dispositive of the current case. Because there are several factual uncertainties which could distinguish the current case from those cited by the Defendant, Plaintiffs argue that under *Graff*, the case requires adjudication of specific facts. The site-specific facts that Plaintiffs point to include: "whether the additional fixed leafleting zones sought by Plaintiffs would congest pedestrian flow; whether such zones would so offend licensees that they would stop doing business at

16

McCormick Place; and whether many facility visitors benefit from information offered by non-licensees." Resp. to Def.'s Mot. to Dismiss at 12-13. Furthermore, the Plaintiff points out that of the nineteen public forum cases cited by the Defendant, only two of those were disposed of via a 12(b)(6) motion, making it clear that dismissal is the exception, not the rule.[5]

This Court agrees with Plaintiffs that this case cannot be decided on the basis of a motion to dismiss. There still exist disputed issues of material fact. Construing the complaint in the light most favorable to the Plaintiffs, this Court cannot determine at this time that all of McCormick Place is a non-public forum and that the 2001 or 2004 policies

---

[5]Four of the public forum cases cited by the MPEA were disposed of at trial: *Hawkins v. City and County of Denver*, 170 F.3d 1281, 1285 (10th Cir. 1999); *Sefick v. Gardner*, 164 F.3d 370, 371 (7th Cir. 1998); *ISKCON v. N.J. Sports and Exposition Auth.*, 691 F.2d 155, 158 (3rd Cir. 1982); *Sefick v. United States*, No. 98-C5031, 1999 WL 778588, at *1 (N.D. Ill. 1999). Three were decided after an evidentiary hearing: *Chicago Acorn v. MPEA*, No. 96 C 4997, 1998 WL 164882, at *1-*2 (N.D. Ill. 1998), *rev'd*, 150 FD.3d 695 (7th Cir. 1998); *Families Achieving Independence and Respect v. Neb. Dep't of Social Svs.*, 111 F.3d 1408, 1414 (8th Cir. 1997); *Henderson v. Lujan*, 964 F.2d 1179, 1181 (D.C. Cir. 1992). Eight were decided on summary judgment: *ISKON v. Lee*, 505 U.S. 672, 676-77 (1992); *Cornelius v. NAACP Legal Defense and Educ. Fund*, 473 U.S. 788, 796 (1985); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 41-42 (1983); *Hotel Employees & Rest. Employees Union v. City of New York*, 311 F.3d 534, 543 (2nd Cir. 2002); *New England Regional Council of Carpenters v. Kinton*, 284 F.3d 9, 14 (1st Cir. 2002); *ISKON Miami v. Metro. Dade County*, 147 F.3d 1282, 1285 (11th Cir. 1998); *Hubbard Broadcasting, Inc. v. Metro. Sports Facilities Comm'n*, 797 F.2d 552, 554 (8th Cir. 1986); *Hampton Int'l Comm., Inc. v. Las Vegas Convention and Visitors Auth.*, 913 F. Supp. 1402, 1405 (D. Nev. 1996). Two were decided by a means other than a motion to dismiss: *U.S. v. Kokinda*, 497 U.S. 720, 724 (1990) (decided by a criminal conviction); *Ayres v. City of Chicago*, 125 F.3d 1010, 1012 (7th Cir. 1997) (decided by a preliminary injunction). Only two were decided by motions to dismiss: *Graff v. City of Chicago*, 9 F.3d 1309, 1323 (7th Cir. 1993) (en banc); *Int'l Caucus of Labor Comms. v. City of Chicago*, 816 F.2d 337 (7th Cir. 1987).

are reasonable as a matter of law. Therefore, Defendant's Motion to Dismiss Plaintiffs' Complaint based upon the 2004 policy is denied.

## D. THE PLAINTIFFS' CLAIMS REGARDING THE 2001 POLICY ARE NOT MOOT

The Defendant's final argument is that a portion of the Plaintiffs' Second Amended Complaint (Paras. 17-33, 68 and Prayer for Relief) should be dismissed as moot because it refers only to the MPEA's original 2001 policy. Mot. to Dismiss at 15-17. Under Article III of the U.S. Constitution, cases that do not involve "actual, ongoing controversies" are considered "moot" and should be dismissed for lack of jurisdiction. U.S. CONST. art. III; *Federation of Adver. Indus. and Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003).

### 1. *The Damages Action and the Declaratory Judgment are Inextricably Intertwined*

In a recent Seventh Circuit decision, *Crue v. Aiken*, the court held that even if a claim for injunctive relief is barred, a claim for declaratory judgment may remain as a predicate to a related damages award. 370 F.3d 668, 677-78 (7th Cir. 2004). Thus, the Seventh Circuit recognized that an award of damages is often dependant upon a court's declaratory finding that the defendant is culpable.

In this case, Plaintiff Albrecht has alleged that she suffered damages as a result of the 2001 policy. Reading the complaint in the light most favorable to the Plaintiffs, this Court concludes that there is a viable case or controversy as to whether the MPEA's application of

the 2001 policy caused Plaintiffs' damages. However, in order to determine whether damages should be awarded, this Court will need to determine whether the 2001 policy was unconstitutional. Therefore, Plaintiffs' claims for damages and declaratory relief regarding the 2001 policy will not be dismissed.

Defendant raises an interesting issue in its reply brief regarding the Plaintiffs' failure to assert a damages claim until their second amended complaint. The MPEA notes that the Plaintiffs did not include a request for damages until after the MPEA had adopted the 2004 policy and until after it had moved to dismiss the case as moot. The MPEA asserts that the Plaintiffs' late addition of the damages claim was an attempt to "keep their claim alive." Def.'s Reply at 12. The MPEA relies upon *Boucher v. Syracuse University*, where the Second Circuit held: "[a] request for damages...will not avoid mootness if it was inserted after the complaint was filed in an attempt to breathe new life into a moribund dispute." 164 F.3d 113, 118 (2nd Cir. 1999).

Nonetheless, Fed. R. Civ. P. 15(a) provides that parties may amend their complaints by leave of court and that "leave shall be freely given when justice so requires." Plaintiffs were granted leave to amend their complaint after Defendant adopted its 2004 policy and moved to dismiss Plaintiffs' first amended complaint. The Court has no reason to believe that the claim for damages is not being raised in good faith consistent with Fed. R. Civ. P. 11 and 15(a).

19

## 2. Plaintiffs' Claim for Injunctive Relief Regarding the 2001 Policy Will Not be Dismissed at this Time.

In a recent Seventh Circuit decision, *Federation of Advertising Industry and Representatives, Inc. v. City of Chicago*, where a plaintiff was challenging a city ordinance that was repealed during the course of the litigation, the court noted: "a repeal, expiration, or significant amendment to challenged legislation ends the ongoing controversy and renders moot a plaintiff's request for injunctive relief." 326 F.3d at 930. The court further held that a complete repeal of a challenged law renders injunctive relief moot, unless there is "reasonable evidence creating a reasonable expectation that the [defendant] will reenact the ordinance or one substantially similar." *Id.* at 930. Courts have recognized that greater stock should be given to a governmental official's repeal so long as their actions appear genuine. *Id.* at 929. This standard of justiciability applies to government enacted statutes and ordinances as well as less formal governmental policies. *See e.g., Ragsdale v. Turnock*, 841 F.2d 1358, 1365-66 (7th Cir. 1988) (applying this standard of justiciability to regulations affecting abortion).

In this case, the MPEA argues that the adoption of the 2004 policy at McCormick Place constitutes the "significant amendment" contemplated by the court in *Federation*, such that Plaintiffs' continued arguments regarding the first McCormick Place policy should be dismissed as moot. Plaintiffs argue that the injunctive relief should not be dismissed because there is a danger that the MPEA will reenact the 2001 policy. Plaintiffs cite to Defendant's Motion to Dismiss as evidence that Defendant may decide to reinstate the 2001 policy.

20

Particularly, Plaintiffs point to the MPEA's statements that the MPEA believes that its 2001 policy was reasonable and lawful; that the new policy will burden the MPEA's interest; and that the MPEA decided to create a new policy only to "avoid the expense of further litigation and potential liability for attorney fees." *See* Mot. to Dismiss at 4, 9, 13, 17.

Although this Court does not expect that injunctive relief regarding the 2001 policy will be necessary in this case, it is unwilling to dismiss the possibility entirely at this stage. As previously discussed, at this early stage of the lawsuit this Court cannot decide many of the issues that will prove critical to the outcome of this litigation. However, this Court urges Plaintiffs to seriously consider the established case law in order to consider whether they intend to pursue injunctive relief regarding the MPEA's 2001 policy. For the reasons stated above, the Plaintiffs' claim for injunctive relief regarding the 2001 policy will not be dismissed at this time.

## IV. CONCLUSION

There are many issues raised by this litigation, including: 1) whether McCormick Place is a public or non-public forum; 2) whether portions of McCormick Place should be categorized as public while other portions should be categorized as non-public; and 3) whether the 2001 and 2004 policies are unconstitutional. A motion to dismiss is not the proper stage to decide these issues. These issues are better determined on the basis of a factual record and a trial on the merits. For the reasons set forth in this opinion, **the Defendant's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint is denied.**

**SO ORDERED THIS 1st DAY OF OCTOBER, 2004.**

_Morton Denlow_

**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

Copies mailed to:

| | |
|---|---|
| Bettina Getz | Harvey Grossman |
| Daniel G. Hildebrand | Adam Schwartz |
| David W. Fuller | Connie Chung |
| MAYER, BROWN, ROWE & MAWE LLP | ROGER BALDWIN FOUNDATION of ACLU, Inc. |
| 190 South LaSalle Street | 180 N. Michigan Ave. Suite 2300 |
| Chicago, Illinois 60603 | Chicago, IL 60601 |
| (312) 782-0600 | (312) 201-9740 |
| | |
| Counsel for Defendant | Counsel for Plaintiff |