IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KATHERINE ALBRECHT, et al.   )
          )
     Plaintiffs,  )
          )
  v.       ) Case No. 03 C 6472
          )
METROPOLITAN PIER AND  )
EXPOSITION AUTHORITY,  )
          ) Magistrate Judge Denlow
     Defendant.  )

**FILED**

OCT 2 8 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DOCKETED**

OCT 2 9 2004

## ANSWER TO PLAINTIFFS' SECOND AMENDED
## AND SUPPLEMENTAL CLASS ACTION COMPLAINT

   Defendant Metropolitan Pier and Exposition Authority ("Defendants") answers the

Second Amended Complaint as follows:

### I. INTRODUCTION

1.  This is a civil rights lawsuit. Plaintiffs allege violations of the First Amendment to the
   United States Constitution, and bring their action pursuant to 42 U.S.C. §§ 1983 and 1988
   and 28 U.S.C. § 2201 et seq. Plaintiffs seek declaratory and injunctive relief, and
   damages.

**ANSWER:** Defendant admits that this is a civil rights lawsuit, that plaintiffs allege violations of

the First Amendment to the United States Constitution, that plaintiffs bring their complaint

pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 2201 et seq., and that plaintiffs seek

declaratory and injunctive relief and damages. Defendant denies that the complaint and its

claims have merit, denies that plaintiffs are entitled to declaratory and injunctive relief or

damages, and denies any remaining allegations of this paragraph.

2.  Plaintiffs allege that the MPEA has violated the First Amendment by adopting and
   enforcing a policy of restricting expressive activity inside and outside of McCormick
   Place by "non-licensees" (*i.e.*, those who have not paid to license facility space) to
   inadequate areas that do not allow effective communication with McCormick Place
   visitors.

45

**ANSWER:** Defendant admits that plaintiffs make the allegations set forth in this paragraph. Defendant denies the allegations themselves, denies that defendant has violated the First Amendment, and denies that the complaint has merit.

3.　　Plaintiffs challenge this policy both on its face and as applied to their respective expressive activities.

**ANSWER:** Defendant admits that plaintiffs purport to raise a facial and applied challenge, denies that the complaint frames a proper "as applied" challenge even as pled, and denies that either the facial or as applied challenges have substantive merit.

## II. JURISDICTION AND VENUE

4.　　This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3).

**ANSWER:** Defendant admits the allegations of this paragraph.

5.　　Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e).

**ANSWER:** Defendant admits the allegations of this paragraph.

## III. THE PARTIES

6.　　Plaintiff Albrecht is a graduate student, and a consumer privacy advocate. She is the founder and director of Consumers Against Supermarket Privacy Invasion and Numbering ("CASPIAN"). Albrecht and CASPIAN regularly engage in public advocacy.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

7.　　Plaintiff Young is a physician, and a healthcare policy reform advocate. He is the National Coordinator of Physicians for a National Healthcare Program ("PNHP"). Young and PNHP regularly engage in public advocacy.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph and therefore denies the allegations.

8.      Defendant MPEA is a unit of the governments of the State of Illinois and the City of Chicago. The MPEA owns, operates, and controls McCormick Place.

**ANSWER:** Defendant denies the allegations of the first sentence and admits the allegations of the second sentence. Further answering, defendant states that it is a municipal corporation, body politic and unit of local government organized and existing under the laws of the State of Illinois, pursuant to 70 ICLS § 201 et seq.

## IV. CLASS ALLEGATIONS

9.      Plaintiffs bring this action on their own behalf and on behalf of a class of all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.

**ANSWER:** Defendant admits that plaintiffs have brought this action as a purported class action as alleged in this paragraph, denies that class treatment is appropriate, and denies that plaintiffs have pled a basis for a class action against defendant.

10.      The plaintiff class consists of all persons that now seek and/or in the future will seek to engage in expressive activities at locations inside and outside McCormick Place that allow effective communication with McCormick Place visitors.

**ANSWER:** Defendant admits that the complaint defines a class as alleged in this paragraph, denies that the class definition is adequate or appropriate, and denies that plaintiffs have pled a basis for a class action against defendant.

11.      The plaintiff class satisfies all of the prerequisites stated in Rule 23(a):

    (a)      Hundreds of individuals and groups now seek and/or in the future will seek to engage in expressive activities at McCormick Place.

- 3 -

(b)    There are questions of law and fact common to the class. The common questions include whether the challenged policy violates the First Amendment.

(c)    The claims of the named plaintiffs are typical of the claims of the class. The named plaintiffs have engaged in expressive activity at McCormick Place in the past, and they intend to do so again in the future.

(d)    The named plaintiffs will fairly and adequately represent the interests of the class. They have no interests antagonistic to the class. They seek declaratory and injunctive relief on behalf of the entire class, and such relief will benefit all members of the class. Finally, they are represented by counsel who are competent and experienced in civil rights and class action litigation.

**ANSWER:** Defendant denies the allegations of this paragraph.


12.    The plaintiff class satisfies Rule 23(b)(2) because the defendants have engaged in a course of conduct common to all members of the class, and final declaratory and injunctive relief in favor of the class is therefore appropriate.

**ANSWER:** Defendant denies the allegations of this paragraph.


## V. FACTS

### A.    McCormick Place

13.    McCormick Place is a convention center located near downtown Chicago.

**ANSWER:** Defendant admits the allegations of this paragraph.


14.    McCormick Place has the following physical attributes:

(a)    It is comprised of the Lakeside Center east of Lake Shore Drive; the Grand Concourse, North Building, and South Building west of Lake Shore Drive; a pedestrian bridge over Lake Shore Drive that connects the Lakeside Center and the Grand Concourse; a park called "McCormick Square" to the west of the Grand Concourse; and surrounding parking facilities.

(b)    It contains 2.2 million square feet of meeting space, 112 meeting rooms, three theaters, and seating for 10,000 people.

(c)    It provides direct access to the City's transportation grid, including streets, sidewalks, and the Metra train.

(d)    Many locations inside and outside the facility are open to the public - including to persons with no connection whatsoever to any of the events occurring within McCormick Place - to freely enter, move about from place to place, and gather and communicate with other people.

(e)    Many locations inside the facility are at least 50 feet wide and allow a high volume of pedestrian flow.

(f)    It contains numerous restaurants and stores, all of which display commercial advertisements.

(g)    It contains seating areas immediately adjacent to beautiful fountains and artworks, used and plainly designed as places for the public to stop, gather, and relax.

**ANSWER:** Defendant denies that McCormick Square is a park. Defendant states that the allegation that McCormick Place "provides direct access to the City's transportation grid" is vague and ambiguous and denies that allegation. Defendant denies subparagraphs (d), (f) and (g). Defendant admits the remaining allegations of this paragraph as providing correct general descriptions of aspects of the present facility. Defendant denies any remaining allegations of this paragraph.

15.    McCormick Place has the following uses:

(a)    It is the nation's premier convention facility, and is visited by more than 4,000,000 people every year.

(b)    Many governmental, religious, and professional organizations license space at McCormick Place to gather and communicate with each other regarding a myriad of important public issues.

(c)    It is an integral part of the economic and political life of the City of Chicago, the State of Illinois, and the entire nation.

(d)    Elected officials and political party leaders participate in functions at McCormick Place.

(e)    Visitors commonly wear clothes that bear a wide variety of written and other messages.

**ANSWER:** Defendant denies that McCormick Place is the nation's "premier" convention facility if measured only by size or number of visitors, but states that defendant markets the facility as such and believes that McCormick Place's facility, features, services and location are superior to all of its competitors. Defendant denies that "many" governmental and religious organizations license space at McCormick Place, and states that such organizations represent a welcome but modest percentage of the facility's customer base. Defendant denies that McCormick Place is an integral part of the political life of the City of Chicago, the State of Illinois, and the entire nation. Defendant denies the allegations of subparagraph (e). Defendant admits the remaining allegations of this paragraph as providing correct general descriptions of aspects of the present facility or its users. Defendant denies any remaining allegations of this paragraph.

16. The MPEA has prohibited non-licensees from engaging in expressive activity at many locations inside and outside McCormick Place that are:

    (a)    traditional public forums;

    (b)    designated public forums; or

    (c)    fully compatible with a wide scope of expressive activity without infringing upon any security, safety, traffic flow, economic, or other legitimate governmental interests.

**ANSWER:** Defendant denies the allegations of this paragraph. Further answering, defendant states that to the extent this paragraph sets forth a legal conclusion, no answer is required.

**B.**     **The MPEA's 2001 Policy**

17. On October 1, 2001, the MPEA promulgated a written policy regarding expressive activity by non-licensees at McCormick Place ("the 2001 policy"). The first three paragraphs of this policy provided:

    (a)    "MPEA will provide areas for persons wishing to engage in First Amendment expression. The locations of these areas are defined by the General Manager."

(b) "Examples of First Amendment expression include but are not limited to the following: literature distribution, signature solicitation and picketing."

(c) "All activities must take place within the designated areas. The designated area will be shown on a map attached to the Permit."

**ANSWER:** Defendant states that this paragraph correctly summarizes a portion of the 2001 policy, refers to the 2001 policy for its complete contents, and denies any allegations inconsistent with the policy itself. Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.

18. The MPEA also had promulgated a permit form. The very first stated "permit condition" on this form was: "Your activity or activities must take place within the designated areas stated above and shown on the map attached to this permit as Exhibit A."

**ANSWER:** Defendant denies that the permit form is separate from the policy, states that this paragraph correctly summarizes a portion of the 2001 policy, refers to the 2001 policy for its complete contents, and denies any allegations inconsistent with the policy itself. Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.

19. The MPEA map attached to the permit was titled "Designated Locations at McCormick Place for First Amendment Staging Activities." The map stated that activities related to shows in the Lakeside Center "must be held on the sidewalk south and clear of Gate 30", and defined this as "Area 1." It further stated that activities related to shows in the North and South buildings "must be held on the sidewalk between the pylons on Martin Luther King Drive", and defined this as "Area 2."

**ANSWER:** Defendant denies that the map is separate from the policy, states that this paragraph correctly summarizes a portion of the 2001 policy, refers to the 2001 policy for its complete contents, and denies any allegations inconsistent with the policy itself. Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.

20.     Separately and collectively, these three MPEA documents comprised an explicit written policy that banned all First Amendment expressive activity by non-licensees anywhere within or around McCormick Place, with the sole exception of the two aforementioned Designated Areas.

**ANSWER:**  Defendant admits that the three referenced documents comprised the written 2001 policy and denies the remaining allegations of this paragraph.  Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.


21.     Designated Areas 1 and 2 are wholly inadequate venues for expressive activities.

**ANSWER:**  Defendant denies the allegations of this paragraph.  Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.


22.     Designated Area 1 has the following attributes:

    (a)     It is outside and 103 feet south of Gate 30 of the Lakeside Center.

    (b)     It is very noisy, located less than 50 feet east from Lake Shore Drive, and immediately west from a truck loading dock.

    (c)     It is far from any significant pedestrian flow.

    (d)     The overwhelming majority of visitors to McCormick Place will never see or hear expressive activity occurring at Area 1.

**ANSWER:**  Defendant admits that Designated Area 1 was outside, east of Lakeshore Drive and approximately 100 feet south of Gate 30, and west of a truck loading dock.  Defendant states it has not measured the distance to Lakeshore Drive but estimates it to be in excess of 50 feet. Defendant denies the remaining allegations of this paragraph.  Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.

23.   Designated Area 2 has the following attributes:

    (a)   It is located at the western edge of McCormick Square and 279 feet away from Gate 4 (the main western entrance into the facility).

    (b)   It is far from any significant pedestrian flow.

    (c)   For people traveling north or south on Martin Luther King Drive towards Area 2, the pylons themselves are a barrier to seeing or hearing activity taking place between or adjacent to the pylons.

    (d)   The overwhelming majority of visitors to McCormick Place will never see or hear expressive activity occurring at Area 2.

**ANSWER:**   Defendant admits that Designated Area 2 was located on the western side of McCormick Square, approximately 279 feet from Gate 4.   Defendant denies the remaining allegations of this paragraph.   Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.


**C.   The Application of the 2001 policy to Albrecht**

24.   Albrecht and other members of CASPIAN oppose the development and use of Radio Frequency Identification ("RFID") to tag and track individual consumer products, on the grounds that RFID will improperly invade consumer privacy.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and on that basis denies the allegations.   Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.


25.   On September 15 through 17, 2003, the Electronic Product Code ("EPC") Symposium regarding RFID took place at the North Building of McCormick Place. The EPC Symposium was sponsored by the Auto-ID Center, which is developing RFID with the support of over 100 businesses and government bodies from around the world. At least 24 businesses exhibited their products at the EPC Symposium, including major companies like IBM. Thousands of key decision makers in leading organizations were invited to the EPC Symposium.

**ANSWER:** Defendant admits the allegations of the first sentence, and admits that the EPC symposium was sponsored by the Auto-ID Center. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and on that basis denies the allegations. Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.

26. Albrecht and other CASPIAN members made plans to express to the participants in the EPC Symposium their opposition to RFID on September 16, 2003. That day, EPC Symposium speeches, meetings, and exhibits took place in the North Building meeting rooms and exhibition halls. Inside the Grand Concourse, which is in close proximity to those rooms and halls, Albrecht and her associates planned to distribute leaflets, wear expressive clothing, and speak to people who wished to speak with them. Additionally, outside and close to Gate 4, which is an entrance commonly used by visitors going to events in the North Building, they planned to distribute leaflets, wear expressive clothing, speak to people who wished to speak with them, and carry expressive signs.

**ANSWER:** Defendant admits the allegations of the second sentence of this paragraph. Defendant admits that the Grand Concourse is in reasonably close proximity to the North Building, Hall B-1, where the EPC Symposium occurred, and that Gate 4 is one of several entrances commonly used by visitors going to events in the North Building. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and on that basis denies the allegations. Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.

27. Members of CASPIAN have distributed leaflets at other events, because it is a highly effective means to communicate facts and opinion to the public.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and on that basis denies the allegations. Further

answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.

28.     On or about August 28, 2003, CASPIAN member Liz McIntyre spoke by telephone with Fred Simon, a supervisor at McCormick Place. Simon provided to CASPIAN a copy of the "First Amendment" policy and "Designated Area" map described above. Simon further advised McIntyre that if a person wore a T-shirt inside McCormick Place that bore an expressive message, they would be removed from the facility.

**ANSWER:** Defendant admits the allegations of the first two sentences of this paragraph. Defendant denies the third sentence of this paragraph. Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.

29.     On September 9, 2003, counsel for Albrecht sent a letter to the MPEA requesting permission for Ms. Albrecht and others, within the Grand Concourse, to distribute leaflets, wear expressive clothing, and engage in public education.

**ANSWER:** Defendant admits that the allegations of this paragraph are a summary of the referenced letter, refers to the letter for its complete contents, and denies any allegations inconsistent with the letter. Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.

30.     On September 11, 2003, counsel for the MPEA sent a letter to counsel for Albrecht stating that other than for private trade shows, expositions, and similar events, "the facility's interior is not otherwise open to the public for free expression." The letter further stated that the MPEA "restricts public expression on the facility's exterior to the designated areas identified in the permit application." The MPEA enclosed with this letter the permit and "Designated Area" map described above.

**ANSWER:** Defendant admits that the allegations of this paragraph are a summary of the referenced letter, refers to the letter for its complete contents, and denies any allegations

- 11 -

inconsistent with the letter. Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.

31. Also on September 11, 2003, counsel for Albrecht spoke by telephone with counsel for the MPEA. Counsel for Albrecht asked whether the MPEA would allow any members of CASPIAN to engage in expressive activity in McCormick Square, at any place closer to Gate 4 than the pylons. Counsel for the MPEA answered in the negative.

**ANSWER:** Defendant admits that the referenced conversation took place between the parties' counsels on or about September 11, 2003, but denies the remaining allegations of this paragraph as a vague and incomplete summary of the conversation. Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.

32. After Albrecht filed this lawsuit on September 12, and before the TRO hearing scheduled for September 15, the MPEA altered its position and stated that it does not prohibit expressive clothing inside McCormick Place.

**ANSWER:** Defendant denies the allegations of this paragraph. Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.

33. On September 16, pursuant to the MPEA's ban on expressive activity as well as the MPEA's post-litigation position change, Albrecht and others engaged in the following expressive activities at McCormick Place:

    (a)    Albrecht and 20 to 25 others gathered at Designated Area 2. During the roughly two hours they were there, very few McCormick Place visitors walked anywhere near the area, and only two or three visitors spoke to them.

    (b)    Inside level 2.5 of the Grand Concourse, Albrecht and roughly 10 others gathered and wore expressive clothing. During the roughly 20 minutes they were there, many McCormick Place visitors walked by, and roughly 12 visitors spoke to them. Four visitors asked Albrecht for written materials; however, Albrecht was prohibited by McCormick Place policy from giving them leaflets. Pursuant to this Court's instructions at the end of the TRO hearing on September 15, 2003,

> Albrecht gave one of her business cards to each of these four visitors; doing so did not infringe upon any security, safety, traffic flow, economic, or other legitimate governmental interests.

(c)     Albrecht was forbidden from engaging in any expressive activity outside Gate 4 at any point closer than Area 2.

**ANSWER:** Defendant denies that Albrecht or anyone else engaged in any conduct "pursuant to the MPEA's ban on expressive activity as well as the MPEA's post-litigation position change." Defendant denies subparagraph (a). Defendant admits on information and belief that Albrecht and roughly four others gathered and wore expressive clothing in the Grand Concourse on September 16, 2003, and that while they were there many McCormick Place visitors walked by, some visitors spoke to them, and some visitors received written materials. Defendant denies that this activity "did not infringe upon any security, safety, traffic flow, economic, or other legitimate governmental interests," and denies any remaining allegations of subparagraph (b). Defendant denies the allegations of subparagraph (c). Further answering, defendant states that the 2001 policy is no longer in force and any allegations regarding that policy or its application to plaintiffs are moot.

## D.     The MPEA's 2004 policy

34.    On June 21, 2004, the MPEA promulgated a new written policy regarding expressive activity by non-licensees at McCormick Place ("the 2004 policy"). It took effect on June 30, 2004. It prohibits expressive activity by non-licensees anywhere inside or outside of McCormick Place, with the exception of two outdoor and five indoor locations described below.

**ANSWER:** Defendant admits the allegations of the first and second sentences of this paragraph. Defendant denies the allegations of the third sentence of this paragraph.

35.    The outdoor "McCormick Square Zone" is the same as Area 2 of the 2001 policy. It is inadequate for the reasons set forth above in paragraph 23.

**ANSWER:** Defendant admits the allegations of the first sentence of this paragraph. Defendant denies the allegations of the second sentence of this paragraph.

36.     The outdoor "Lakeside Center Sidewalk Zone" is the same as Area 1 of the 2001 policy. It is inadequate for the reasons set forth above in paragraph 22.

**ANSWER:** Defendant admits the allegations of the first sentence of this paragraph. Defendant denies the allegations of the second sentence of this paragraph.

37.     Indoor Leafleting Area #1 has the following attributes:

(a)     it is a 3' x 6' area;

(b)     it is located on the covered walkway over Martin Luther King Drive between Parking Lot A and the South Building, at the top of the escalators leading down to Level 1 of the South Building; and

(c)     it is closed to the public (including leafleters) until February 2006.

**ANSWER:** Defendant admits the allegations of subparagraphs (a) and (b). Defendant admits that Leafleting area #1 is closed to the public and that the walkway is expected to reopen on or about February 2006. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of subparagraph (c) and on that basis denies them.

38.     Indoor Leafleting Area #2 has the following attributes:

(a)     it is a 3' x 6' area; and

(b)     it is located adjacent to the brochures kiosk on Level 2.5 of the Grand Concourse, underneath the escalator that leads up to Level 3 of the Grand Concourse.

**ANSWER:** Defendant admits the allegations of this paragraph.

39.     Indoor Leafleting Area #3 has the following attributes:

(a)     it is a 3' x 6' area; and

     (b)     it is located on Level 3 of the South Building, immediately northwest of the skybridge over Lake Shore Drive.

**ANSWER:** Defendant admits the allegations of this paragraph.

40.     Indoor Leafleting Area #4 has the following attributes:

     (a)     it is a 3' x 9' area; and

     (b)     it is located underground, at the bottom of the ramp leading from the Lakeside Center to Parking Lot C, underneath Gate 38; and

     (c)     it is dimly lit.

**ANSWER:** Defendant admits the allegations of subparagraphs (a) and (b). Defendant denies the allegations of subparagraph (c).

41.     Indoor Leafleting Area #5 has the following attributes:

     (a)     it is located underneath Gate 30; and

     (b)     otherwise, it shares the same attributes as Leafleting Area #4.

**ANSWER:** Defendant denies that Leafleting Area # 5 is dimly lit. Defendant admits the remaining allegations of this paragraph.

42.     Separately and together, the seven areas designated by the MPEA's 2004 policy are wholly inadequate venues for expressive activities by non-licensees. Events taking place at McCormick Place use various combinations of meeting rooms, exhibition halls, theaters, concourses, halls, and foyers. Based in significant part on the locations of particular events, visitors to McCormick Place may enter and exit the facility at more than 20 separate locations, and may arrive and depart by means of taxis, private cars, public and private buses, and trains. While McCormick Place contains more than two million square feet of space, visitors frequently restrict their movement to areas in close proximity to the events they are attending. Consequently, for the vast majority of McCormick Place events, the vast majority of visitors will never see or hear expressive activity occurring at the seven locations designated in the MPEA's 2004 policy.

**ANSWER:** Defendant admits the allegations of the second sentence, and admits that visitors to McCormick Place may enter and exit the facility at more than 20 separate locations, and may

- 15 -

arrive and depart by means of taxis, private cars, public and private buses, and trains. Defendant

denies the remaining allegations of this paragraph.


**E.**      **The application of the 2004 policy to Young**

43.      On June 30 through July 3, 2004, the American Physical Therapy Association ("APTA")
         held its annual conference at McCormick Place. There are over 64,000 members in the
         APTA. Thousands of individuals attended this APTA conference.

**ANSWER:** Defendant admits that from June 30 to July 2, 2004 the American Physical Therapy

Association ("APTA") held its annual conference at McCormick Place, and that thousands of

individuals attended this conference. Defendant lacks knowledge or information sufficient to

form a belief as to the truth or falsity of the allegations of the remaining allegations of this

paragraph and on that basis denies them.


44.      On June 30, 2004, between 8:30 a.m. and 10:00 a.m., the APTA held the opening
         ceremony of this conference in Room 354 at Level 3 of the Lakeside Center of
         McCormick Place. The current U.S. Surgeon General, Dr. Richard Carmona, presented
         the keynote address in which he outlined his vision for the nation's public health system.

**ANSWER:** Defendant admits the allegations of this paragraph.


45.      Young and his associates made plans to distribute leaflets about universal health care to
         individuals attending the APTA opening ceremony. The leaflets invited physical
         therapists to join other health care professionals in an effort to achieve universal health
         care. The leaflets urged them to endorse the PNHP proposal for national health insurance,
         noting further that the proposal has been endorsed by former U.S. Surgeons General Dr.
         David Satcher and Dr. Julius Richmond.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations of the first sentence and on that basis denies them. Defendant states

that the remaining allegations are a summary of the referenced leaflet, refers to the leaflet for its

complete contents, and denies any allegations inconsistent with the leaflet.

46. On June 25, 2004, counsel for Young sent a letter to counsel for the MPEA requesting permission for Young and seven of his associates to distribute leaflets at eight specified locations inside the Lakeside Center at the same date and time as the APTA opening ceremony. These eight locations would have allowed him and his associates to distribute leaflets and otherwise to communicate with a substantial number of the visitors attending the APTA opening ceremony, given the ceremony's specific location as stated above in paragraph 44.

ANSWER: Defendant admits that the allegations of the first sentence of this paragraph are a summary of the referenced letter, refers to that letter for its complete contents, and denies any allegations inconsistent with the letter. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the second sentence of this paragraph and on that basis denies the allegations.

47. On June 28, 2004, counsel for the MPEA sent a letter to counsel for Young stating that under both the new policy and the prior policy, leafleting is not allowed at the eight areas Young sought permission to use.

ANSWER: Defendant admits that the allegations of this paragraph are a summary of the referenced letter, refers to that letter for its complete contents, and denies any allegations inconsistent with the letter.

48. Later that day, counsel for the MPEA and Young spoke on the telephone. Counsel for Young requested permission for Young and his associates to leaflet at Leafleting Areas 3 through 5, the Lakeside Center Sidewalk Zone, and the McCormick Square Zone. On June 29, 2004, the MPEA gave permission for Young and his associates to leaflet in these locations.

ANSWER: Defendant admits that the allegations of this paragraph are a summary of the referenced conversation, and that on or about June 29, 2004 defendant gave Young and his associates permission to use the referenced leafleting areas and zones.

49. On June 30, pursuant to the MPEA's application of its new policy to Young and his proposed expressive activity, Young's associates engaged in leafleting at Leafleting Areas 3 through 5, the Lakeside Center Sidewalk Zone, and the McCormick Square Zone. They

distributed leaflets to 216 visitors and 3 McCormick Place staff members, and offered leaflets to an additional 19 to 25 visitors.

**ANSWER:** Defendant admits the allegations of the first sentence of this paragraph. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of the second sentence of this paragraph and on that basis denies those allegations.

50. Young's intended audience of APTA members was highly receptive to receiving Young's message in the form of the leaflets. Approximately 90% of the persons offered the message accepted it. However, because the sites were not in proximity to the most commonly used paths for persons attending the event, Young's associates come in contact with only a small portion of the attendees. Had Young and his associates been placed in closer proximity to the APTA members, more of them would have agreeably accepted his message.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and on that basis denies those allegations.

51. At the same time and date, at locations very close to where Young's associates distributed leaflets, thousands of visitors entered the Lakeside Center and attended the APTA opening ceremony.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and on that basis denies those allegations.

52. Large numbers of people who did not pass by the five foregoing approved locations passed by the eight locations at the Lakeside Center where the MPEA would not allow Young and his associates to leaflet.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and on that basis denies those allegations.

53. As a direct result of the MPEA's application of its 2004 policy to their proposed expressive activity, Young and his associates were unable to effectively communicate with the vast majority of their intended audience.

**ANSWER:** Defendant denies the allegations of this paragraph.

**F.** **Albrecht's future expressive activity at McCormick Place**

54.    In addition to the EPC Symposium in September 2003, Albrecht attended the Retail Systems 2003 conference at McCormick Place, which addressed RFID.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and on that basis denies those allegations.

55.    In May 2004, McCormick Place hosted the Retail Systems 2004 conference, which addressed RFID.

**ANSWER:** Defendant admits that the Retail Systems 2004 conference took place at McCormick Place in May 2004. Defendant states that the remaining allegations of this paragraph are vague, and that defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and on that basis denies those allegations.

56.    Albrecht has participated in expressive activities in numerous locations other than McCormick Place.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and on that basis denies those allegations.

57.    Albrecht desires to engage in expressive activity at future events at McCormick Place that raise consumer privacy issues.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and on that basis denies those allegations.

**G.** **Young's future expressive activity at McCormick Place**

58.    Young resides and works as a physician in Chicago.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and on that basis denies those allegations.

59.     Young frequently engages in expressive activity regarding healthcare policy.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and on that basis denies those allegations.

60.     Young has attended numerous events at McCormick Place, including meetings of medical professional associations.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and on that basis denies those allegations.

61.     Every year, McCormick Place hosts numerous events that relate to healthcare policy, including meetings of medical professional associations.

**ANSWER:** Defendant admits that numerous meetings of medical and healthcare industry professionals take place every year at McCormick Place. Defendant states that the remaining allegations of this paragraph are vague, and that defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this paragraph and on that basis denies those allegations.

62.     Young desires to engage in expressive activity at future events at McCormick Place that raise healthcare issues.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and on that basis denies those allegations.

**H.      Injury to plaintiffs**

63.    If the MPEA continues to enforce its policy identified above, plaintiffs and all persons similarly situated will be unable to effectively communicate with their intended audiences at future events at McCormick Place.

ANSWER: Defendant denies the allegations of this paragraph.


64.    The adoption and enforcement of the MPEA's policy identified above impose an unreasonable restriction on the First Amendment rights of citizens like Albrecht and Young, and groups like CASPIAN and PNHP, to express their views on political, social and cultural issues.

ANSWER: Defendant denies the allegations of this paragraph.


I.    **Necessity of injunctive relief**

65.    Unless enjoined by this Court, the MPEA will continue to enforce the policy described above.

ANSWER:  Defendant admits that its 2004 policy is presently enforced, and will be enforced

until it is revised or a new policy is adopted.  Defendant denies that any injunction against its

policy is warranted.  Further answering, defendant states that it has the discretion to revise its

policy or issue a new policy in response to customer, operations, safety or other such concerns,

or in response to changes in the applicable law.


66.    Plaintiffs and all persons similarly situated will suffer irreparable harm as a result of the MPEA's adoption and enforcement of the policy described above.

ANSWER:  Defendant denies the allegations of this paragraph.


67.    Plaintiffs have no adequate remedy at law.

ANSWER:  Defendant denies the allegations of this paragraph.


## VI. CLAIM FOR RELIEF

68.     The adoption and enforcement of the policies described above violate the First
Amendment, both on their face and as applied to the plaintiffs' respective expressive
activities.

**ANSWER:** Defendant denies the allegations of this paragraph.


## VII. <u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiffs respectfully request the following relief:

A.     Entry of a declaratory judgment that the defendant violated the First
Amendment by adopting and enforcing its policies defined above.

B.     Entry of a preliminary injunction, and then a permanent injunction, that
enjoins the defendant from:

(1)     enforcing their written policies defined above; and

(2)     prohibiting groups and individuals from engaging in expressive
activities at locations inside and outside McCormick Place that allow effective
communication with McCormick Place visitors.

C.     Compensatory damages to Young and Albrecht arising from defendant's
unlawful conduct described herein.

D.     An award to plaintiffs of their reasonable attorneys' fees, costs, and
expenses pursuant to 42 U.S.C. § 1988.

E.     The award of such other and further relief as this Court may deem just and
proper.

**ANSWER:** Defendant denies that plaintiffs are entitled to the relief requested in this clause or

any other relief whatsoever.


## DEFENSES

1.     Plaintiffs' complaint fails to state a claim because the Authority's 2004 policy is

facially constitutional and goes beyond the unambiguous requirements of First Amendment law.

Specifically, McCormick Place is a non-public forum as a matter of law, and the Authority has

gone beyond the "reasonableness" standard applicable to such forums in establishing five interior leafleting zones and two exterior protest zones to accommodate free speech.

2. Plaintiffs' claims are non-justiciable in part on mootness grounds, in that the claims regarding the 2001 policy are moot as a matter of law.

3. Plaintiffs' complaint fails on standing and ripeness grounds, in that plaintiffs have not alleged a proper basis for a class action and lack standing to assert the first amendment rights of others.

4. Plaintiffs' claims for injunctive relief fail because they have not suffered and will not suffer irreparable harm.

Dated: October 28, 2004

Respectfully submitted,
METROPOLITAN PIER AND EXPOSITION
AUTHORITY

By: _____
     One of Their Attorneys

Bettina Getz
Daniel G. Hildebrand
David W. Fuller
MAYER, BROWN, ROWE & MAW LLP
190 South LaSalle Street
Chicago, IL 60603
(312) 782-0600

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for defendant, hereby certifies that on the 28th day of October, 2004, I caused to be served to the party listed below a true and correct copy of the attached **ANSWER TO PLAINTIFF'S SECOND AMENDED AND SUPPLEMENTAL CLASS ACTION COMPLAINT**, via hand delivery, before the hour of 5:00 p.m.

Adam Schwartz
The Roger Baldwin Foundation of ACLU, Inc.
190 North Michigan Avenue
Suite 2300
Chicago, IL 60601

By: _____
    One of the Attorneys for defendant

Bettina Getz
Daniel G. Hildebrand
David W. Fuller
MAYER, BROWN, ROWE & MAW LLP
190 South LaSalle Street
Chicago, IL 60603
(312) 782-0600