

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**FILED**

KATHERINE ALBRECHT and QUENTIN YOUNG, on behalf of themselves and all persons similarly situated, )
)
)
)

MAY 1 9 2005 WH

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

       Plaintiffs, )
)

Case No. 03 C 6472

       v. )
)

Magistrate Judge Cole

METROPOLITAN PIER AND EXPOSITION AUTHORITY, )
)
)

Magistrate Judge Schenkier

       Defendant. )

## MEMORANDUM IN SUPPORT OF JOINT MOTION
## FOR APPROVAL OF SETTLEMENT AGREEMENT

After more than a year of vigorous advocacy followed by five months of court-supervised, arms-length negotiations, the parties in this case jointly move for approval of the proposed Settlement Agreement attached hereto as Exhibit 1. Such approval is proper pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

When class settlements are submitted for judicial approval, a two-step process is followed:

> First, counsel submit the proposed terms of settlement and the court makes a preliminary fairness evaluation. . . . If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

Manual for Complex Litigation § 30.41 (3d ed. 1997).

1

Although there is an overriding public interest in favor of settling class actions, E.E.O.C. v. Hiram Walker & Sons, Inc., 768 F.2d 884, 888-89 (7th Cir. 1985), the proponents of the settlement bear the burden of persuasion as to the fairness of the proposed resolution. Therefore, the parties jointly submit this memorandum to assist the Court in its preliminary evaluation of the fairness of the proposed resolution. The memorandum contains a short summary of the litigation to date, a description of the terms of the proposed Settlement Agreement, and a discussion of the merits of this resolution.

## I.     **SUMMARY OF THE LITIGATION.**

On September 12, 2003, plaintiff Katherine Albrecht filed the initial complaint in this lawsuit, which alleged that defendant the Metropolitan Pier and Exposition Authority ("MPEA") violated the First Amendment to the U.S. Constitution by adopting and enforcing a policy of restricting expressive activity at McCormick Place by non-paying visitors to inadequate areas that do not allow effective communication with other visitors. At the time of this initial complaint, the MPEA limited such expressive activity to two outdoor group activity zones.

Also on September 12, 2003, Albrecht moved for a temporary restraining order regarding her ability to engage in expressive activity in certain other locations at McCormick Place during a particular facility event. On September 15, 2003, following briefing, an evidentiary hearing, and oral argument, this Court denied the motion.

From October 2003 through October 2004, the parties engaged in substantial written discovery, including the production of more than 5,000 pages of documents, and

2

the propounding and responding to scores of interrogatories and admission requests.

On April 22, 2004, plaintiff Albrecht moved to file an amended complaint, which sought to add (a) Quentin Young as an additional named plaintiff, and (b) a putative plaintiff class. This motion was granted on May 24, 2004.

On May 22, 2004, plaintiffs moved for certification of a plaintiff class. That motion was withdrawn without prejudice on January 18, 2005.

On June 21, 2004, the MPEA moved to dismiss the amended complaint as moot, in light of its new policy (effective June 30, 2004) on expressive activity at McCormick Place. This new policy added four leafleting zones in and around the facility, and years into the future would have added an additional interior leafleting zone. On June 23, 2004, the MPEA withdrew its motion to dismiss, on the plaintiffs' representation that they would soon be filing a second amended complaint addressing the new MPEA policy.

On July 7, 2004, plaintiffs moved to file a second amended complaint, which added a challenge to the new MPEA policy. This motion was granted on July 8, 2004.

On July 30, 2004, the MPEA moved to dismiss the second amended complaint. The MPEA argued that its new policy passed First Amendment muster as a matter of law, and that plaintiffs' challenge to its old policy was moot. On October 1, 2004, following briefing and oral argument, this Court denied the MPEA's motion. *See Albrecht v. MPEA*, 338 F. Supp. 2d 914 (N.D. Ill. 2004). In light of the Court's ruling and also its comments at oral argument, both parties understood that they faced significant risks if they attempted to prevail in the litigation on the merits, without compromise. The parties therefore accepted the Court's suggestion that they be referred to Magistrate Judge

3

Schenkier for a court-supervised mediation.

From November 2004 through March 2005, the parties engaged in intensive, court-supervised, arms-length settlement negotiations, including: (a) at least nine face-to-face meetings with Magistrate Judge Schenkier; (b) at least four face-to-face meetings at the grounds of McCormick Place to discuss the operation and layout of the facility, and potential additional locations for expressive activity; (c) at least two other face-to-face meetings of counsel; and (d) the exchange of at least ten different written positions and draft agreements. This settlement process culminated in the proposed Settlement Agreement attached hereto as Exhibit 1.

Simultaneously with the filing of this joint motion and supporting memorandum for approval of the proposed Settlement Agreement, and as required by the Settlement Agreement, plaintiffs have filed an unopposed motion to certify a plaintiff class.

## II. DESCRIPTION OF THE PRINCIPAL SETTLEMENT TERMS.

The following is a summary of the principal terms of the proposed Settlement Agreement attached as Exhibit 1. This two-page summary does not address every relevant term in the proposed Settlement Agreement, which is ten pages long.

### A. Expressive activity by non-paying visitors

The MPEA will allow non-paying McCormick Place visitors to distribute leaflets to other facility visitors from fixed leafleting zones located outside all public entrances and exits to McCormick Place. *See* Exh. 1 at ¶¶ 4, 5, 11(a), 11(b). Each of the agreed leafleting zones is limited to one leafleter at a time, except that three leafleting zones allow two leafleters at a time. *Id.* at ¶ 11(c).

4

The MPEA also will continue to allow non-paying McCormick Place visitors to engage in a variety of expressive activities at two outdoor group activity zones (i.e., at the pylons on Martin Luther King Drive, and on the sidewalk south of the Lakeside Center). *See* Exh. 1 at ¶ 11(e).

**B.    Unresolved issues**

The MPEA currently is building a new West Building at McCormick Place, which will not open until 2008. Accordingly, the parties have reserved for future resolution, if necessary, any dispute about the location of leafleting zones at the entry/exit points of the West Building. *See* Exh. 1 at ¶ 16.

Moreover, the parties have agreed not to resolve in this case whether an individual non-paying visitor may enter the publicly accessible areas of the McCormick Place buildings and therein wear expressive clothing, or speak to people who wish to speak. *See* Exh. 1 at ¶ 15.

**C.    Procedural issues**

Plaintiffs will move to certify a plaintiff class comprising: "All persons that now seek and/or in the future will seek to engage in unlicensed, free-of-charge expressive activities at locations inside and outside McCormick Place – with the exception of persons wishing to engage in commercial speech at McCormick Place." *See* Exh. 1 at ¶¶ 3, 12. The proposed Settlement Agreement is void if such certification is not granted. *Id.* at ¶ 12.

The plaintiffs, on their own behalf and on behalf of the plaintiff class, will release the MPEA and its personnel from any claims alleged or that could have been alleged in

5

this litigation that arise from the same common nucleus of operative facts alleged in the complaints, except for the two unresolved issues noted above and as may be contrary to law. *See* Exh. 1 at ¶ 14.

This Court will retain jurisdiction over this case solely for purposes of interpreting, enforcing, and modifying this Settlement Agreement. *See* Exh. 1 at ¶ 17.

### D. Attorney fees.

The MPEA will pay the plaintiffs $172,000 for all costs, expenses, and fees incurred by plaintiffs through the entry of an order approving this Settlement Agreement. *See* Exh. 1 at ¶ 18.

## III. THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE.

The decision to approve a class settlement is within the discretion of the District Court, after considering on a case-by-case basis certain factors that courts consistently have identified as relevant to the fairness determination, including:

1. The strength of the case for plaintiffs and defendants on the merits, balanced against the settlement;

2. the complexity, length, and expense of further litigation;

3. the presence of collusion in reaching the settlement;

4. the amount of opposition to the settlement and the reaction of members of the class to the settlement;

5. the opinion of competent counsel;

6. the stage of the proceedings and the amount of discovery completed; and

7. the public interest.

6

*See* Hispanics United of DuPage County v. Village of Addison, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997), *citing* Armstrong v. Board of School Directors, 616 F.2d 305, 314 (7th Cir. 1980), *and* Hiram Walker, 768 F.2d at 889. *See also* Manual for Complex Litigation § 30.42 (3d ed. 1997); 2 Newberg on Class Actions at § 11.43 (3d ed. 2002).

"The district court should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." Hiram Walker, 768 F.2d at 889; Dawson v. Pastrick, 600 F.2d 70, 75 (7th Cir. 1979). "The essence of settlement is compromise." Hiram Walker, 768 F.2d at 889; Gautreaux v. Pierce, 690 F.2d 616, 637 (7th Cir. 1982). "Each side gains the benefit of immediate resolution of the litigation and some measure of vindication for its position while foregoing the opportunity to achieve an unmitigated victory." Hiram Walker, 768 F.2d at 889; United States v. Armour & Co., 402 U.S. 673, 681 (1971); McDonald v. Chicago Milwaukee Corp., 565 F.2d 416, 429 (7th Cir. 1977). "Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." Hiram Walker, 768 F.2d at 889 (italics in original); Freedman v. Air Line Stewards & Stewardesses Association, Local 550, 730 F.2d 509, 514-15 (7th Cir. 1984).

Although discussion of the fourth factor listed above is premature prior to notice and an opportunity for class members to comment, a brief discussion of the remaining factors, as set forth below, indicates that the proposed Settlement Agreement is within the range of fair, reasonable, and adequate resolutions of this case.

### A. The strength of the case for plaintiffs and defendant on the merits, balanced against the settlement.

The terms of the settlement are fair, reasonable and adequate when balanced against the strength of plaintiffs' case and defendant's case on the merits.

### 1. Plaintiffs' view of the case.[1]

Plaintiffs' complaints allege that the MPEA violated the First Amendment to the U.S. Constitution by adopting and enforcing policies of restricting expressive activity at McCormick Place by non-paying visitors to inadequate areas that do not allow effective communication with other visitors. Specifically, the MPEA initially limited such expressive activity to two outdoor group activity zones. Subsequently, the MPEA added two perimeter leafleting zones and two interior leafleting zones. However, vast numbers of McCormick Place visitors were unable to see or hear expressive activity taking place in these designated zones.

The proposed Settlement Agreement, on the other hand, ensures that non-paying McCormick Place visitors have an opportunity to offer leaflets to virtually all facility visitors. It does so by establishing leafleting zones located outside all the public entrances and exits to the facility. Thus, the resolution set forth in the proposed Settlement Agreement is fair, reasonable, and adequate.

---

[1] The views contained in this section are those of plaintiffs alone. Likewise, the views contained in the next section below are those of defendant alone.

2.    **Defendants' view of the case**.

McCormick Place was established by the Illinois legislature to be a premier

publicly-owned convention and meetings facility that promotes jobs and economic

development in the City of Chicago and the State of Illinois.  As a result, the MPEA'

purpose in operating McCormick Place is to compete effectively in the national market

for large trade shows, exhibitions and meetings.  The MPEA contends that McCormick

Place is a "non-public forum" under First Amendment law, and that its rules concerning

free expressive conduct need only be reasonable, consistent with the facility's use as a

convention center.  Chicago Acorn v. MPEA, 150 F.3d 695 (7th Cir. 1998); Grossbaum

v. Indianapolis-Marion County Building Auth., 100 F.3d 1287, 1299 (7th Cir. 1996).  The

MPEA further contends that its prior policy, which provided for free speech and protest

activities at to two large outdoor protest zones (one in McCormick Square, on the western

side of the facility, and one outside Lakeside Center, on the eastern side of the facility),

struck a reasonable balance between free speech rights and the MPEA's need to run a

competitive convention facility dedicated to attracting paying customers and hosting their

business meetings.

Early in the litigation, the Court denied plaintiff's motion for a temporary

restraining order, allowed the MPEA to continue applying its policies, and ruled that the

MPEA had a significant probability of success on its argument that McCormick Place

was a non-public forum.  Later, the Court denied the MPEA's motion to dismiss and

indicated a factual hearing would be necessary to determine whether additional speech

access rights were consistent with the MPEA's reasonable operational goals.  Throughout

9

the litigation, plaintiffs insisted that the public interior areas of McCormick Place were a "public forum," much like a government plaza or public park, and should be open for all manner of speech activities directed at customers of McCormick Place. Since McCormick Place's customers spend millions of dollars to mount exhibitions, shows and meetings in Chicago, the MPEA was concerned that an adverse ruling forcing the MPEA to open its facility to protestors would have a negative impact on McCormick Place's competitive position in the convention industry. Accordingly, the MPEA believes the present settlement is fair, adequate and reasonable because it preserves the MPEA's right to maintain the interior of its facility for the exclusive use of its customers, and yet adds leafleting zones on the sidewalks around McCormick Place's public entrances, so as to afford individual leafleters better access to customers entering and exiting the facility.

**B.    The complexity, length and expense of further litigation.**

Further litigation and trial of this case would be complex, lengthy and expensive, especially given the myriad complex legal and factual issues posed.

**C.    The presence of collusion in reaching the settlement.**

The proposed Settlement Agreement is not the result of collusion, but rather the product of intensive arms-length negotiations over a period of five months. Magistrate Judge Schenkier supervised at least nine face-to-face settlement conferences; the parties met at McCormick Place at least four times to discuss the operation and layout of the facility, and particular locations for expressive activity; and the parties exchanged at least ten different written positions and draft agreements. Also, the payment under the proposed Settlement Agreement of $172,000 in attorney fees and costs to the plaintiffs is

10

not the result of collusion. See Hispanics United, 988 F. Supp. at 1166 (approving a settlement agreement that included payment of $2.5 million in attorney fees to plaintiffs).

### D.  The amount of opposition to the settlement and the reaction of class members to the settlement.

It is premature to discuss this factor, because formal notice has not yet been given to the plaintiff class, and the fairness hearing has not been held.

### E.  Opinion of competent counsel.

The Court is "entitled to rely heavily on the opinion of competent counsel." Armstrong, 616 F.2d at 325. Counsel for plaintiffs and the plaintiff class and counsel for defendant recommend acceptance of the proposed Settlement Agreement. The suit at bar is complex, the litigation has been vigorous, the negotiating process was at arm's length, and the Settlement Agreement provides a fair, reasonable, and adequate disposition of these lawsuits. Further, counsel for the parties are competent and experienced in class and constitutional litigation.

### F.  The stage of the proceedings.

The parties have substantially explored the factual and legal underpinnings of this case, as described above. Accordingly, the case is ripe for settlement pursuant to the proposed Settlement Agreement.

### G.  The public interest.

The plaintiffs state that the Settlement Agreement furthers the public interest in freedom of speech. The defendant states that the Settlement Agreement furthers the public interest in appropriately balancing freedom of speech against the legitimate

operational goals of McCormick Place, which serves the important public purpose of
promoting jobs, tax revenues, and economic growth in Chicago and the State of Illinois.
All parties state that the Settlement Agreement furthers the public interest in favor of
settling class action lawsuits. Hiram Walker, 768 F.2d at 888-89.

## Conclusion

For the foregoing reasons, and pursuant to Rule 23(e), the parties respectfully request that the Court at this time: (a) make a preliminary finding that the proposed Settlement Agreement is within the range of fair, reasonable, and adequate resolutions; (b) set a date for a fairness hearing; and (c) command mailed notice to the plaintiff class as proposed in the attached motion. The parties further request that following the fairness hearing, this Court: (a) approve the proposed Settlement Agreement; and (b) retain jurisdiction to interpret, enforce, and modify the Settlement Agreement.

Respectfully submitted,

| **For the plaintiffs:** | **For the MPEA:** |
|---|---|
| By: _____ | By: _____ |
| Date: 5/18/05 | Date: 5/18/05 |
| Harvey Grossman<br>Adam Schwartz<br>Roger Baldwin Foundation of ACLU, Inc.<br>180 N. Michigan Ave., Suite 2300<br>Chicago, IL 60601 | Bettina Getz<br>Daniel G. Hildebrand<br>Mayer, Brown, Rowe & Maw LLP<br>190 S. La Salle St.<br>Chicago, IL 60603 |
| William J. Gibbons<br>Erin Shaw<br>Latham & Watkins<br>233 S. Wacker Dr., Suite 5800<br>Chicago, IL 60606 | |

**EXHIBIT 1**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KATHERINE ALBRECHT and QUENTIN YOUNG, on behalf of themselves and all persons similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 03 C 6472 |
| | ) | |
| v. | ) | Magistrate Judge Cole |
| | ) | |
| METROPOLITAN PIER AND EXPOSITION AUTHORITY, | ) ) | Magistrate Judge Schenkier |
| | ) | |
| Defendant. | ) | |

## SETTLEMENT AGREEMENT

Plaintiffs Katherine Albrecht and Quentin Young, on behalf of themselves and all persons similarly situated, and defendant the Metropolitan Pier and Exposition Authority ("MPEA"), by and through their respective counsel, hereby agree as follows:

### Recitals

1.      In this lawsuit, plaintiffs allege that the MPEA has violated the First Amendment to the U.S. Constitution by adopting and enforcing a policy of restricting expressive activity at McCormick Place by non-paying visitors to inadequate areas that do not allow effective communication with other visitors.

2.      The MPEA denies that it has violated the First Amendment. In particular, the MPEA contends that its First Amendment policy dated October 1, 2001, which restricted expressive activity by non-licensed users of McCormick Place to two large exterior protest zones, and its Policy for Public Expression at McCormick Place adopted on or about June 30, 2004, which added additional zones, policies and procedures, represented reasonable limitations on free expression in a non-public forum such as

1

**EXHIBIT 1**

McCormick Place. At all times prior to and during this litigation, the MPEA has contended that pursuant to the MPEA's enabling legislation, McCormick Place was established and intended by the Illinois legislature to serve as one of the nation's leading public convention centers, and to bring jobs and economic development to Chicago and the State of Illinois.

### Definitions

3. As used herein, "the plaintiff class" consists of all persons that now seek and/or in the future will seek to engage in unlicensed, free-of-charge expressive activities at locations inside and outside McCormick Place. The plaintiff class shall expressly exclude persons wishing to engage in commercial speech at McCormick Place; such persons are granted no rights under this agreement.

4. As used herein, "the primary agreed perimeter leafleting areas" means the following locations on the exterior sidewalks or in the parking garage foyers or Metra foyer of McCormick Place:

(a) outside Gate 2, next to and west of any of the seven freestanding concrete piers;

(b) outside Gate 4, within the eight small square light gray flagstones just south of the first planter;

(c) outside Gate 21, in front of any of the three bay windows between the revolving doors;

(d) outside Gate 22, in front of the window between the swinging doors;

(e)     outside Gate 31, in front of the window between the two revolving doors;

(f)     outside Gate 37, in front of the window between the two revolving doors;

(g)     inside Parking Lot A, at Level 1, at the area outside the double doors leading into the conference center, at the painted yellow crosshatches on the floor immediately north of the doors;

(h)     inside the foyer that serves as the western entry point connecting Parking Garage C to the Lakeside Center, (i) at the northern area of the foyer, in front of and south of the window between the automatic sliding doors and (ii) next to the west wall of the foyer;

(i)     inside the foyer that serves as the eastern entry point connecting Parking Garage C to the Lakeside Center, (i) at the northern area of the foyer, in front of and south of the window between the automatic sliding doors, and (ii) next to the east wall of the foyer;

(j)     inside the foyer of the Metra station on Level 2.5 of the South Building, in the eastern half of the foyer (i.e., east of the north-south silver floor line that meets the north-south half-wall).

5.     As used herein, "the secondary agreed perimeter leafleting areas" means the following locations on the exterior sidewalks of McCormick Place:

(a)     outside Gate 1, next to and west of any of the three concrete piers abutting the wall between revolving doors;

    (b)     outside Gate 3, next to and west of any of the three concrete piers abutting the wall between revolving doors;

    (c)     outside Gate 20, in front of the window between swinging doors;

    (d)     outside Gate 25, next to the handicapped push-button post;

    (e)     outside Gate 26, in any of the four alcoves between the swinging doors;

    (f)     outside Gate 27, next to the column next to the doors;

    (g)     outside Gate 30, next to the pillar located near the curb;

    (h)     outside Gate 32, in front of either of the two bays of windows between the swinging doors;

    (i)     outside Gate 33, in front of either of the two bays of windows between the swinging doors;

    (j)     outside Gate 34, in front of any of the three bays of windows between the swinging doors; and

    (k)     outside Gate 38, next to the pillar located near the curb.

6.    As used herein, "the outdoor group expressive activity areas" means the following McCormick Place locations:

    (a)     the area of McCormick Square on the bluestones surrounding the pylons, adjacent to the sidewalk along Martin Luther King Drive, roughly between the entrance and exit driveways into McCormick Square; and

    (b)     the sidewalk area outside and south of Gate 30, to the south of the southern end of the handicap accessibility ramp, and to the north of the bushes.

7.    As used herein, "the agreed written notice" means the written notice to the plaintiff class regarding this Settlement Agreement that is attached as exhibit 4 to the parties' joint motion for approval of this Settlement Agreement.

8.    As used herein, "the two agreed lists" means the two lists of members of the plaintiff class that are attached as exhibits 5 and 6 to the parties' joint motion for approval of this Settlement Agreement. One of these lists identifies each ascertainable member of the plaintiff class who engaged in expressive activity at McCormick Place from February 2001 to November 2003, or who requested permission to do so. The other list, compiled by the plaintiffs, identifies other members of the plaintiff class who might in the future engage in expressive activity at McCormick Place, or request permission to do so.

9.    As used herein, "Parking Garage A" means the parking garage located west of Martin Luther King Drive and south of Cermak Road, abutting the Hyatt Conference Center, and "Parking Garage C" means the underground parking facility to the south of Lakeside Center.

### Agreement

10.    In order to avoid protracted and costly litigation, the plaintiffs and the MPEA have agreed to settle and compromise the above-captioned action under the terms and conditions set forth herein. This Settlement Agreement shall not in any way constitute an admission of liability, fault, or wrongdoing by the MPEA or any of its agents, representatives, or employees.

11.    In consideration for the mutual promises, covenants and agreements contained in this Settlement Agreement, the MPEA shall allow the members of the

plaintiff class to engage in the following unlicensed expressive activities at the following areas of McCormick Place, and also shall be allowed to restrict unlicensed expressive activity at McCormick Place to the following activities in the following areas, subject to paragraphs 15 and 16 herein:

(a)    At each of the primary agreed perimeter leafleting areas, the MPEA shall allow members of the plaintiff class to distribute leaflets.

(b)    At each of the secondary agreed perimeter leafleting areas, the MPEA shall allow members of the plaintiff class to distribute leaflets to the extent the MPEA has opened the adjacent facility exit/entry gate for use that day by facility visitors.

(c)    At each of the primary and secondary agreed perimeter leafleting areas, the MPEA may restrict members of the plaintiff class to one leafleter per zone, except at the Parking Garage A and Parking Garage C leafleting zones, where the MPEA shall allow two leafleters per zone.  Except as provided in subparagraph (d) below, leafleters must remain in the zone and cannot roam, and for zones that offer more than one location in which to stand, the leafleter must pick one such location and remain there.

(d)    As to the primary and secondary agreed perimeter leafleting areas adjacent to a numbered facility gate, with the exception of the leafleting area near Gate 4, when visitors are entering or exiting McCormick Place at a point not immediately adjacent to a leafleting area, a member of the plaintiff class may leave the leafleting area (or, at Gates 1, 2, 3, 21, 26, 32, 33 and 34, switch to one of the defined alternate locations) only as far as is necessary to approach such visitors and offer them leaflets, provided that the class member (i) must return to the nearest leafleting area as soon as

6

they have offered leaflets to such visitors, and (ii) may not inhibit the free flow of pedestrian traffic or obstruct entry doors or fire exits.

(e)     At both of the outdoor group expressive activity areas, the MPEA shall allow members of the plaintiff class, either individually or gathered in a group, to picket, carry signs, march, demonstrate, hold a rally, hold a vigil, solicit signatures or contributions, hold a press conference, and/or engage in similar forms of expressive activity. Plaintiffs acknowledge that the MPEA allowed such activities at the outdoor group expressive activity areas prior to entering into this settlement agreement.

(f)     When a member of the plaintiff class requests permission to engage in expressive activity at McCormick Place on a particular date, the MPEA shall promptly advise that class member of all primary and secondary agreed perimeter leafleting areas, and all group expressive activity areas, that are available to class members on that date.

(g)     The parties expressly considered and agreed that, subject to this paragraph 11 and paragraphs 15 and 16 herein, the MPEA is entitled to prohibit unlicensed expressive activities in the interior of McCormick Place, and at exterior locations of McCormick Place other than those leafleting areas and outdoor group expressive areas identified herein.

12.     The plaintiffs shall move to certify the plaintiff class defined herein. To the extent class certification is denied, this agreement shall be null and void.

13.     The parties agree that reasonable notice to the plaintiff class of this proposed Settlement Agreement would be provided by sending the agreed written notice defined above by first class mail to each person or group identified in the two agreed lists

defined above. If the Court approves such notice, the plaintiffs shall provide and pay for such notice. The parties further agree that neither party will incur additional costs for providing notice.

14.     In consideration for the mutual promises, covenants and agreements contained herein:

(a)     the named plaintiffs Albrecht and Young waive their claims for damages; and

(b)     plaintiffs, on behalf of themselves and all persons and organizations in the plaintiff class represented by them in this matter, agree to release and forever discharge the MPEA and each and all of its present and former officers, employees, directors and agents from any and all claims and causes of action alleged or that could have been alleged in this litigation that arise from the same common nucleus of operative facts alleged in the complaints in this lawsuit, except as provided in paragraphs 15 and 16 herein, or as otherwise may be contrary to law.

15.     Nothing herein resolves any issues or precludes any claims regarding a member of the plaintiff class entering areas of the McCormick Place buildings that are open to the public and, as an individual and without impeding the smooth flow of pedestrian traffic, (a) wearing expressive clothing, or (b) speaking to people who wish to speak to him or her.

16.     The McCormick Place Campus is currently undergoing a significant physical change: the construction of the McCormick Place West Building, which the MPEA expects will contain 470,000 square feet of new exhibition space and open for business in 2008. As a result of this major construction project, certain physical aspects

of the McCormick Place Campus are in flux. For example, the pedestrian entrance to Parking Garage A currently is on the first floor of the garage, and the MPEA expects that this pedestrian entrance will be relocated to another floor of the garage within a few years. Because of this significant change in the physical attributes of the McCormick Place Campus, the parties agree to reserve for future resolution in this case the following issue and no others: the location of leafleting areas for members of the plaintiff class (a) at the exterior perimeter of the McCormick Place West Building, including at any entry/exit gates for pedestrians, cars, taxis, or buses, and (b) at Parking Garage A entrance points into the West Building.

17.     The district court shall retain jurisdiction over this case solely for purposes of interpreting, enforcing, and (as provided for in paragraph 16 above) modifying this Settlement Agreement. The parties understand and agree that this Settlement Agreement should in no way be construed as a consent decree. The parties further agree that they shall attempt in good faith to resolve informally any differences that arise regarding interpretation of, modification of, or compliance with this Settlement Agreement.

18.     In consideration for the mutual promises, covenants and agreements contained in this Settlement Agreement, the MPEA further agrees to pay the plaintiffs the total sum of $172,000 for costs, expenses and fees, including attorney's fees, costs for providing notice to the certified class as set forth herein, and any other costs, expenses, or fees, incurred in this action through and including the entry of a final order approving this Settlement Agreement. Plaintiffs shall bear their own costs, expenses and fees, including attorney's fees, costs for providing notice to the certified class as set forth herein, and any other costs, expenses or fees incurred in this action through and including the entry of a

final order approving this Settlement Agreement, for any amount in excess of the foregoing $172,000. Further, the MPEA shall make full payment of this amount within 60 days of the approval of this Settlement Agreement; otherwise, interest shall accrue from the date of approval until the date of payment, at the rate provided for by 28 U.S.C. § 1961.

19.     Each signatory to this Settlement Agreement represents and warrants that he or she is authorized to sign on behalf of any individual or organization for whom he or she signs.

| For the plaintiffs: | For the MPEA: |
|---|---|
| By: _____ | By: _____ |
| Date: 5/18/05 | Date: 5-17-05 |
| Harvey Grossman<br>Adam Schwartz<br>Roger Baldwin Foundation of ACLU, Inc.<br>180 N. Michigan Ave., Suite 2300<br>Chicago, IL 60601 | Leticia Peralta-Davis<br>Chief Executive Officer<br>Metropolitan Pier and Exposition Authority<br>301 E. Cermak Rd.<br>Chicago, IL 60616 |
| William J. Gibbons<br>Erin Shaw<br>Latham & Watkins<br>233 S. Wacker Dr., Suite 5800<br>Chicago, IL 60606 | Of Counsel:<br>Bettina Getz<br>Daniel G. Hildebrand<br>Mayer, Brown, Rowe & Maw LLP<br>190 S. La Salle St.<br>Chicago, IL 60603 |

**EXHIBIT 2**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KATHERINE ALBRECHT and QUENTIN )
YOUNG, on behalf of themselves and all )
persons similarly situated, )
            )
       Plaintiffs, )     Case No. 03 C 6472
            )
       v. )     Magistrate Judge Cole
            )
METROPOLITAN PIER AND )     Magistrate Judge Schenkier
EXPOSITION AUTHORITY, )
            )
       Defendant. )

## ORDER

This matter is before the Court on the Joint Motion for Approval of Settlement Agreement by the parties hereto. Having reviewed the Joint Motion and the Settlement Agreement and all other appropriate materials:

1.     The Court makes a preliminary finding that the resolution of this lawsuit as embodied in the Settlement Agreement is within the range of fair, adequate and reasonable settlements.

2.     Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court will hold a fairness hearing regarding the fairness, adequacy, and reasonableness of the proposed Settlement Agreement on the ___ date of _____ , 2005.

3.     Notice to the plaintiff class of the proposed Settlement Agreement shall occur by sending by first class mail the written notice attached to the parties' Joint Motion as Exhibit 4 to: (a) the ascertainable members of the plaintiff class who engaged in expressive activity at McCormick Place from February 2001 to November 2003, as set

1

**EXHIBIT 2**

forth at Exhibit 5 to the parties' Joint Motion; and (b) additional members of the plaintiff class who may engage in expressive activity at McCormick Place in the future, as set forth at Exhibit 6 to the parties' Joint Motion.

DATED: _____ date of _____, 2005

_____

United States Magistrate Judge

**EXHIBIT 3**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KATHERINE ALBRECHT and QUENTIN YOUNG, on behalf of themselves and all persons similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 03 C 6472 |
| | ) | |
| v. | ) | Magistrate Judge Cole |
| | ) | |
| METROPOLITAN PIER AND EXPOSITION AUTHORITY, | ) ) | Magistrate Judge Schenkier |
| | ) | |
| Defendant. | ) | |

## ORDER APPROVING SETTLEMENT AGREEMENT

This cause coming to be heard pursuant to the Joint Motion for Approval of Settlement Agreement presented by the parties hereto, due notice having been given, and the Court having reviewed the Joint Motion and the Settlement Agreement and all other appropriate materials, having heard all objections, if any, to the settlement, having conducted such hearing as is appropriate under Rule 23(e) of the Federal Rules of Civil Procedure, and being otherwise advised in the premises,

**THE COURT FINDS:**

The resolution of this lawsuit as represented in the Settlement Agreements is fair, reasonable and adequate.

1

**EXHIBIT 3**

**ACCORDINGLY, IT IS HEREBY ORDERED:**

The court approves the Settlement Agreement, and shall retain jurisdiction over

the parties and this action solely for purposes of interpreting, enforcing, and modifying

the Settlement Agreement in accordance with its terms.

DATED: _____ date of _____, 2005

_____

United States Magistrate Judge

**EXHIBIT 4**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATHERINE ALBRECHT and QUENTIN YOUNG, on behalf of themselves and all persons similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 03 C 6472 |
| v. | ) ) | Magistrate Judge Cole |
| METROPOLITAN PIER AND EXPOSITION AUTHORITY, | ) ) ) ) | Magistrate Judge Schenkier |
| Defendant. | ) | |

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

### Purpose of the Notice

This notice is being given to plaintiff class members as required by Rule 23(e) of the Federal Rules of Civil Procedure and by order of the Court: (a) to advise class members of the existence of this lawsuit and that the Court has ruled that the case may proceed as a class action; and (b) to inform class members of their rights and of a proposed Settlement Agreement that has been reached. The proposed Settlement Agreement, if approved by the Court, will be a final decision on the issues raised in this lawsuit, and because this case is a class action suit, the Settlement Agreement will be binding upon all class members.

This notice should not be understood as an expression of any opinion by the Court concerning the merits of this action. However, the Court has made a preliminary determination that the proposed Settlement Agreement is within the range of fair, reasonable, and adequate settlements.

1

**EXHIBIT 4**

## Description of the Lawsuit

In this lawsuit, plaintiffs allege that the Metropolitan Pier and Exposition Authority ("MPEA") has violated the First Amendment to the U.S. Constitution by adopting and enforcing a policy of restricting expressive activity at McCormick Place by non-paying visitors to inadequate areas that do not allow effective communication with other visitors.

The MPEA denies that it has violated the First Amendment. In particular, the MPEA contends that its First Amendment policy dated October 1, 2001, which allowed expressive activity by non-licensed users of McCormick Place in two large exterior protest zones, and its Policy for Public Expression at McCormick Place adopted on or about June 30, 2004, which added additional leafleting zones, policies and procedures, represented reasonable limitations on free expression in a non-public forum such as McCormick Place. At all times prior to and during this litigation, the MPEA has contended that its existing policies on public expression were constitutional, and consistent with the legislature's intent to establish McCormick Place as one of the nation's leading public convention centers, and to bring jobs and economic development to Chicago and the State of Illinois.

## Definition of the Plaintiff Class

Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, the Court has allowed the plaintiffs to sue on their own behalf, on behalf of the following plaintiff class: "All persons that now seek and/or in the future will seek to engage in unlicensed, free-of-charge expressive activities at locations inside and outside McCormick Place – with the exception of persons wishing to engage in commercial speech at McCormick Place."

2

### Proposed Settlement

The MPEA will allow non-paying McCormick Place visitors to distribute leaflets to other facility visitors from fixed leafleting zones located outside all public entrances and exits to McCormick Place. Each of the agreed leafleting zones is limited to one leafleter at a time, except that three leafleting zones allow two leafleters at a time.

The MPEA also will continue to allow non-paying McCormick Place visitors to engage in a variety of individual and group expressive activities at the MPEA's existing two outdoor group activity zones.

The MPEA is entitled to prohibit unlicensed expressive activities in the interior of McCormick Place, and at exterior locations of McCormick Place other than the noted leafleting areas and outdoor group expressive areas, except for two issues reserved in the settlement agreement.

The plaintiffs, on their own behalf and on behalf of the plaintiff class, will release the MPEA and its personnel from any claims alleged or that could have been alleged in this litigation that arise from the same common nucleus of operative facts alleged in the complaints, except for two issues reserved in the settlement agreement.

The federal district court will retain jurisdiction over this case solely for purposes of interpreting, enforcing, and modifying the proposed Settlement Agreement.

The MPEA will pay the plaintiffs $172,000 for all costs, expenses, and fees incurred by plaintiffs through the entry of an order approving the proposed Settlement Agreement.

3

## Notice of Hearing on Proposed Settlement

The Settlement Agreement will become final only after the Court holds a hearing and approves it as fair, reasonable, and adequate. You have the right to comment on the proposed Settlement Agreement and/or participate in the hearing if you so choose.

Magistrate Judge Cole, the district court judge hearing this matter, has ordered that a hearing be held on the __ day of __, 2005, in Room __ of the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, 60604, to determine whether to approve the Settlement Agreement as recommended by class counsel and the named plaintiffs.

Comments or objections by class members should be written, and filed by the __ day of __, 2005, with: Michael Dobbins; Clerk of Court; United States District Court for the Northern District of Illinois; 219 South Dearborn Street; Chicago, Illinois 60604.

Attendance at the hearing is not required. However, class members wishing to be heard orally in support of or in opposition to the Settlement Agreement should file a written comment and indicate their intention to appear and speak at the hearing. Class members who do not file written comments or objections will be heard in court at the discretion of the district judge. Written submissions are preferred, however. Class members who approve of the Settlement Agreement do not need to appear at the hearing or take any other action to indicate their approval.

4

If you wish to file any comments or objections with the Court or appear and speak at the hearing, in addition to sending copies to the court, you must mail or serve copies of any filings upon the attorneys for the parties at the addresses below:

| For the plaintiffs: | For the MPEA: |
|---|---|
| Adam Schwartz | Daniel G. Hildebrand |
| Roger Baldwin Foundation of ACLU, Inc. | Mayer, Brown, Rowe & Maw |
| 180 N. Michigan Ave., #2300 | 190 S. LaSalle St. |
| Chicago, IL 60601 | Chicago, IL 60603 |

### Other Matters

If you want a copy of the Settlement Agreement, or if you have any questions about the Settlement Agreement or this litigation generally, you can call Adam Schwartz, one of the attorneys for the plaintiff class, at (312) 201-9740.

The complete court file for this case is available for review at the Federal District Court for the Northern District of Illinois, 219 S. Dearborn Street, 20th Floor, Chicago, Illinois.

The lawyers for the plaintiff class have reviewed the Settlement Agreement and believe it is in the best interest of the plaintiff class. Accordingly, the lawyers have recommended to the representatives of the class that they accept the Settlement Agreement.

5

**EXHIBIT 5**

**Actual users of non-licensee speech zones at McCormick Place
from February 2001 through November 2003**

| Organization | Address - line 1 | Address - line 2 | City | State | Zip |
|---|---|---|---|---|---|
| Carpenters Local 1027 | 12 East Erie Street | | Chicago | Illinois | 60611 |
| Teamster Local 115 | 2833 Cottman Ave | | Philadelphia | PA | 19149 |
| UNITE | 333 S. Ashland Ave. | | Chicago | Illinois | 60607 |
| Lee Gibbons | 6616 Nebraska Avenue | | Hammond | Indiana | 46323 |
| Teamsters Local 738 | 6735 W. Archer Ave. | | Chicago | Illinois | 60638 |
| Workship Coalition, Inc | c/o Calvin Johnson | 3236 W. Polk Street | Chicago | Illinois | 60624 |
| United Auto Workers Region 4 | c/o Doug Womack | 2508 Pinehurst Drive | Aurora | Illinois | 60506 |
| Gery Chico for U.S. Senate | c/o Gery Chico | 651 W. Washington, Suite 202 | Chicago | Illinois | 60661 |
| United Auto Workers | c/o Joel Vujevich | 6155 Sterling Drive | Newport | Michigan | 48166 |
| Carpenters Local 128 | c/o Paul Leahy | 12997 E. 1025th Ave. | Newton | Illinois | 62448 |
| Sheet Metal Workers Local 73 | c/o Rocco Terranova | 936 Apple Drive | Schaumburg | Illinois | 60194 |

**EXHIBIT 5**

**EXHIBIT 6**

Potential users of non-licensee speech zones at McCormick Place

| Organization | Address - line 1 | Address - line 2 | City | State | Zip |
|---|---|---|---|---|---|
| AFL-CIO | 940 W. Adams | | Chicago | Illinois | 60607 |
| African American Police League | 6203 S. M.L. King Jr. Drive | #102 | Chicago | Illinois | 60637 |
| AFSCME | 29 N. Wacker | | Chicago | Illinois | 60606 |
| AIDS Legal Council of Chicago | 220 S. State | | Chicago | Illinois | 60604 |
| American Arab Anti-Discrimination Committee | c/o Khaled J. Elkhatib | 6544 S. Kilpatrick | Chicago | Illinois | 60629 |
| American Association of Retired Persons | 222 N. LaSalle | | Chicago | Illinois | 60601 |
| American Federation of Government Employees | 440 N. Clark | | Chicago | Illinois | 60610 |
| American Friends Service Committee | 637 S. Dearborn | Third Floor | Chicago | Illinois | 60605 |
| American Indian Center | 1630 W. Wilson | | Chicago | Illinois | 60640 |
| American Jewish Committee | 55 E. Monroe | | Chicago | Illinois | 60603 |
| American Jewish Congress | 22 W. Monroe | | Chicago | Illinois | 60603 |
| American Legion Department of Illinois | 2129 W. Cermak | | Chicago | Illinois | 60608 |
| American Muslim Council | c/o Ali Khan | 1005 W. Webster | Chicago | Illinois | 60614 |
| Amnesty International | 53 W. Jackson Blvd. | | Chicago | Illinois | 60604 |
| Anti-Defamation League of B'nai B'rith | 309 W. Washington | | Chicago | Illinois | 60606 |
| Arab American Action Network | c/o Hatem Abudayyeh | 6400 S. Kedzie Avenue | Chicago | Illinois | 60629 |
| Asian American Institute | 5415 N. Clark | | Chicago | Illinois | 60640 |
| Association of Latin Men for Action | 1115 W. Belmont | | Chicago | Illinois | 60657 |
| BE-HIV | 6924 N. Glenwood | | Chicago | Illinois | 60626 |
| Better Government Association | 28 E. Jackson | | Chicago | Illinois | 60604 |
| Campaign to End the Death Penalty | P.O. Box 25730 | | Chicago | Illinois | 60625 |
| Carpenters Local No. 1 | 750 N. Franklin | | Chicago | Illinois | 60610 |
| Catholic Archdiocese | 155 E. Superior | | Chicago | Illinois | 60611 |
| Centro Sin Fronteros | 4811 W. Armitage | | Chicago | Illinois | 60639 |
| Chicago Anti-Bashing Network | 4404 N. Magnolia #420 | | Chicago | Illinois | 60640 |
| Chicago Coalition for the Homeless | 1325 S. Wabash | | Chicago | Illinois | 60605 |
| Chicago Committee to Defend the Bill of Rights | 59 E. Van Buren | | Chicago | Illinois | 60606 |
| Chicago Fire Officers Association | 1800 S. Halsted | | Chicago | Illinois | 60608 |
| Chicago Metropolitan Sanctuary Alliance | 59 E. Van Buren | | Chicago | Illinois | 60605 |
| Chicago Teachers Union | Merchandise Mart Plaza | | Chicago | Illinois | 60654 |
| Chicago Urban League | 4510 S. Michigan | | Chicago | Illinois | 60653 |
| Chicago Vietnam Veterans | 7851 S. Escanaba | | Chicago | Illinois | 60649 |
| Chicagoland Chamber of Commerce | One IBM Plaza | | Chicago | Illinois | 60611 |
| Chinese Community Center | 250 W. 22nd Place | | Chicago | Illinois | 60616 |
| Christian Coalition of America | 3770 North Water | | Decatur | Illinois | 62526 |
| Citizen's Alert | 59 E. Van Buren | | Chicago | Illinois | 60605 |

Page 1

EXHIBIT 6

| Organization | Address - line 1 | Address - line 2 | City | State | Zip |
|---|---|---|---|---|---|
| Comite Exigmos Justicias | P.O. Box 7787 | | Chicago | Illinois | 60680 |
| Community Renewal Society | 322 S. Michigan | | Chicago | Illinois | 60604 |
| Council of Islamic Organizations of Greater Chicago | 330 E. Roosevelt Road | Suite 65 | Lombard | Illinois | 60148 |
| Council on American-Islamic Relations - Chicago | 28 East Jackson Blvd | Suite 1009 | Chicago | Illinois | 60604 |
| Democratic Party of Cook County | 30 N. LaSalle | | Chicago | Illinois | 60602 |
| Disabled American Veterans | 2835 W. Balmoral | | Chicago | Illinois | 60625 |
| Eighth Day Center for Justice | 205 W. Monroe | | Chicago | Illinois | 60606 |
| Electronic Frontier Foundation | 454 Shotwell Street | | San Francisco | CA | 94110 |
| Electronic Privacy Information Center | 1718 Connecticut Ave., NW | Suite 200 | Washington | DC | 20009 |
| Equip for Equality | 11 E. Adams | | Chicago | Illinois | 60603 |
| Fraternal Order of Police Lodge 7 | 1412 W. Washington | | Chicago | Illinois | 60607 |
| Fraternal Order of Police Lodge 72 | 1334 S. Ashland | | Chicago | Illinois | 60608 |
| Global Alliance for Africa | 122 S. Des Plaines | | Chicago | Illinois | 60661 |
| Horizons Community Services | 961 W. Montana | | Chicago | Illinois | 60614 |
| Hotel Restaurant Employees Untion Local 450 | 7238 Roosevelt Road | | Chicago | Illinois | 60130 |
| Human Relations Foundation | 222 N. LaSalle | | Chicago | Illinois | 60601 |
| Human Rights Campaign | P.O. Box 642672 | | Chicago | Illinois | 60664 |
| IBEW | 600 W. Washington | | Chicago | Illinois | 60661 |
| Illinois Civil Justice League | 200 W. Adams | | Chicago | Illinois | 60606 |
| Illinois Coalition Against the Death Penalty | c/o Jane Bowman | 180 N. Michigan, Suite 2300 | Chicago | Illinois | 60601 |
| Illinois Coalition for Immigrant and Refugee Rights | c/o Fred Tsao | 36 S. Wabash Ave., Suite 1425 | Chicago | Illinois | 60603 |
| Illinois Federation of Right-to-Life | 2750 Helen Road | | Carpentersville | Illinois | 60110 |
| Illinois State Rifle Association | P.O. Box 637 | | Chatsworth | Illinois | 60921 |
| IVI-IPO | 828 S. Wabash | | Chicago | Illinois | 60605 |
| Japanese American Citizens League | 5415 N. Clark | | Chicago | Illinois | 60640 |
| Jewish Council on Urban Affairs | 618 S. Michigan | Suite 7 | Chicago | Illinois | 60605 |
| Justice Coalition of Greater Chicago | 618 S. Michigan | | Chicago | Illinois | 60605 |
| Korean American Association | 5941 N. Lincoln | | Chicago | Illinois | 60659 |
| Lambda Legal Defense Fund | 11 E. Adams | | Chicago | Illinois | 60603 |
| Latin American Chamber of Commerce | 3512 W. Fullerton | | Chicago | Illinois | 60647 |
| Latinos United | 36 S. Wabash | | Chicago | Illinois | 60603 |
| Leadership Council for Metropolitan Open Communities | 1127 S. Mannheim Road | | Westchester | Illinois | 60154 |
| League of Women Voters | 332 S. Michigan | | Chicago | Illinois | 60604 |
| Libertarian Party | 316 1/2 N. River | | E. Dundee | Illinois | 60118 |
| MALDEF | 188 W. Randolph | | Chicago | Illinois | 60601 |
| Metropolitan Area Council of Black Churches | 10557 S. Wallace | | Chicago | Illinois | 60628 |
| Midwest Workers Association | 5152 S. Halsted | | Chicago | Illinois | 60609 |
| Muslim Bar Association | c/o Zubair Khan | 227 W. Monroe, Suite 3600 | Chicago | Illinois | 60606 |

| Organization | Address - line 1 | Address - line 2 | City | State | Zip |
|---|---|---|---|---|---|
| Muslim Civil Rights Center | 7667 W. 95th Street | | Hickory Hills | Illinois | 60457 |
| NAACP | 3346 W. Jackson | | Chicago | Illinois | 60624 |
| NARAL | 220 S. State | | Chicago | Illinois | 60604 |
| National Alliance Against Racist and Political Repression | 407 S. Dearborn | | Chicago | Illinois | 60605 |
| National Council of La Raza | 203 N. Wabash | | Chicago | Illinois | 60601 |
| National Federation of Federal Employees | 230 S. Dearborn | Room 3570 | Chicago | Illinois | 60604 |
| National Lawyers' Guild | 36 S. Wabash | Suite 1310 | Chicago | Illinois | 60603 |
| National Organization for Women | 30 E. Adams | | Chicago | Illinois | 60603 |
| Neighborhood Capital Development Budget Group | 407 S. Dearborn | Suite 1360 | Chicago | Illinois | 60605 |
| Polish American Congress | 5711 N. Milwaukee | | Chicago | Illinois | 60646 |
| Presbytery of Chicago | 100 S. Morgan | | Chicago | Illinois | 60607 |
| Privacy Rights Clearinghouse | | | | | |
| Protestants for the Common Good | 200 N. Michigan | | Chicago | Illinois | 60601 |
| Puerto Rican Cultural Center | 1671 N. Claremont | | Chicago | Illinois | 60647 |
| Rainbow PUSH Coalition | 930 E. 50th | | Chicago | Illinois | 60615 |
| Reform Party | Box 188 | | S. Elgin | Illinois | 60177 |
| Republican Party of Cook County | 32 W. Randolph | | Chicago | Illinois | 60601 |
| Resurrection Project | 1628 W. 17th Street | | Chicago | Illinois | 60608 |
| Revolutionary Communist Party | c/o Lou Downey | 1103 N. Ashland | Chicago | Illinois | 60622 |
| SEIU Illinois State Council | 1165 N. Clark | | Chicago | Illinois | 60610 |
| Southwest Youth Collaborative | 6400 S. Kedzie | | Chicago | Illinois | 60629 |
| Stonewall Democrats | 5313 N. Clark, #167 | | Chicago | Illinois | 60640 |
| Teamsters Local 25 | 1645 W. Jackson | | Chicago | Illinois | 60612 |
| Teamsters Local 714 | 6815 Roosevelt Road | | Berwyn | Illinois | 60402 |
| Teamsters Local 786 | 300 S. Ashland | | Chicago | Illinois | 60607 |
| Test Positive Awareness Network | 5537 N. Broadway | | Chicago | Illinois | 60640 |
| UNITE | 35 E. Wacker Drive | | Chicago | Illinois | 60601 |
| United Church of Christ | 332 S. Michigan | | Chicago | Illinois | 60604 |
| United Methodist Church | 8765 W. Higgins | | Chicago | Illinois | 60631 |
| Vietnamese Association of Illinois | 5252 N. Broadway | | Chicago | Illinois | 60640 |

## CERTIFICATE OF SERVICE

I, Adam Schwartz, hereby certify that on the 19th day of May, 2005, I served to the

party listed below a true and correct copy of the attached **JOINT MOTION FOR**

**APPROVAL OF SETTLEMENT AGREEMENT**, via hand delivery, before the hour of

5:00 p.m.

By: _____
    One of the Plaintiffs' Attorneys

TO:    Daniel G. Hildebrand
        Bettina Getz
        David Fuller
        MAYER, BROWN, ROWE & MAW LLP
        190 S. LaSalle Street
        Chicago, IL 60603